# LEWIS, ET AL. v. THE INTENDANT AND TOWN COUNCIL OF GAINESVILLE.

1. A license to establish a ferry is the grant of an incorporeal hereditament subject to be revoked if a sufficient bond is not executed within ten days after such requisition is made. It is an interest which may be sold, and will descend to the heir as an incident of the fee.

2. When a transcript from the Commissioners' Court discloses that the Court had jurisdiction over the subject, the time when it held its session can not be inquired into collaterally.

3. If the Commissioners' Court meets at the proper time, it may adjourn to any day before the commencement of the next term, and is not required to adjourn from day to day until that time.

Assumpsit from the Chancery Court of Sumter.

THE bill was filed by the plaintiffs in error, and charges that the father of complainants obtained an order from the County Court of Sumter for the establishment of a ferry across the Tombigbee river, at the town of Gainesville, on the 23d of January, 1834. That he proceded at great expense, to excavate the bank and prepare boats, and continued in the use and enjoyment of the franchise until his death; intestate leaving

complainants and others his heirs at law.   That the complain-
ants purchased from the other distributees their interest in the
ferry, which is evidenced by deeds—complainants granting a
a life estate in the profits to two females who are parties com-
plainant to the bill.   That the defendants contemplate, and
have commenced the erection of a wharf near the ferry which
will interfere with and materially impair its value, making it
necessary to establish another landing higher up the river, at .
great expense, and greatly increasing the risk of crossing the
river to persons and property.   That if the corporation are
permitted to proceed with the proposed work the injury to
the franchise will be great, if not irreparable.   The prayer of
the bill is for an injunction, which was granted.

Appended to the bill as an exhibit, are the minutes of the
Court of Roads and Revenue of Sumter county, by which
the order was granted, and the grant of the ferry.   The min-
utes recite that, " at a Commissioners' Court held on the 10th
day of June, 1833, *pursuant to adjournment,* and pres-
ent, &c."

A motion being made before His honor, the Chancellor, to
dissolve the injunction, he allowed the motion upon the ground
that the grant of a license to keep a ferry in this State, was a
personal franchise, and did not descend to the heirs of the
grantee.   From this decree an appeal was prayed, and al-
lowed.

BLISS & BALDWIN, for plaintiffs in error.   A ferry is an-
incorporeal hereditament, and it is so regarded by the Le-
gislature of this State in connection with the ownership
of the soil.   [Clay's Dig.  514; 2 Danes Ab. ch. 27, page
683; 2 Rolls Ab. 191; 2 Black Com. 38; 5 Am. Dig. 367;
Ferry B.; 13 Eng. Com. Law, 299; 6 B. & C. 703; 2 Hilliard's
Ab. 81; 2 Stewart's Rep. 160.]

As such it passes by deed and by descent.   [3 Kent's Com.
402, 4th ed.; 3 J. J. M. 668; 2d Ib. 227; 1 Howard, 512.]

As property it will be protected.   [2 Peter's Dig. 641; 6
Munford, 308; 15 Mass. 240.]

Possession and quiet enjoyment are sufficient of themselves
to secure redress, being evidence of title, and sufficient against
a wrong doer.   [13 Eng. Com. Law, 299; 2 Saund. P. & E.
189; Adams on Ejectment, 28.]

Lewis, et al. v. The Intendant and Town Council of Gainesville.

As to the grant, the Court of Roads and Revenue had jurisdiction over the subject, and the Court will not presume that it was not regularly adjourned.

REAVIS & METCALFE, contra. The complainants do not show any right to the ferry, because at the time the grant was made the Court had no power to sit. [Clay's Dig. 149, § 2.] And the record should show affirmatively, that the Court was held at the proper time, and adjourned from day to day, and if not legally held its acts were void, (3 Ala. 670; 9th Wheaton, 541; Peck, 82; 2 Scammon, 227,) and may be collaterally impeached. [6 Wheaton, 119; 6 Porter, 219.]

If the license conferred a right, it was a personal privilege and did not descend to his heirs at law, but terminated with his death. [Clay's Dig. 513, § 26, 27; Ib. 515, § 41; Aik. Dig. 642, § 7; 363, § 27, 30; Hilliard's Ab. 84, § 16; 2 Porter, 296; 6 B. & C. 703; Law. Rep. July, 1842, page, 106; 3 Kent's Com. 3 ed. 420, note a.]

In this State possession alone will not authorize the inference that complainant had a title.

But whether the complainants show sufficient title, the bill is without equity, because the corporation was in the exercise of a lawful authority, unless it be a mischievous case of pressing necessity, (7th Porter, 308) which alone would authorize the interference by injunction. [6th John. C. R. 46.]

ORMOND, J.—At common law, a ferry was an incorporated hereditament, and was consequently capable of alienation, and would pass to the heir by descent. In this State, the whole matter has been regulated by statute; so that we must therefore look thereto to ascertain what rights appertain to the grantee of a ferry.

The act now in force upon this subject, (Clay's Dig. 513, § 36,) authorizes the Commissioners' Court to grant a *license* to any applicant to establish a ferry, toll bridge, or causey—to establish the rate of toll—to require a bond from the applicants in a sum not exceeding fifteen hundred dollars, in the case of a ferry; to keep good and sufficient boats, hands and the banks of the stream in good repair: in the case of a bridge or cau-

sey, that it be well built, and kept in good repair; which bond the Court may at any time, if it deems it necessary, require the applicant to renew, giving him ten days notice, and if he fails to do so, revoke his license. The statute also authorizes an action on the bond at the suit of any one aggrieved.

The 28th section provides, that where two or more persons own lands on the banks where the application is made to estabish a ferry, and the owners on each bank apply for a license, the Court may grant a license to either, at their election. The successful applicant paying such damages as may be assessed upon a writ of *ad quod damnum*. This act was passed in 1836, and was intended as a consolidation of the previous law on the subject with some alterations. The license to establish this ferry was granted in 1834—we should therefore consider this question in reference to the former law, where there is any discrepancy between them.

It cannot be denied that the tenure of the grant of a ferry in this State is somewhat doubtful. The use of the term "license," the requisition of a bond from the licensee, the authority conferred on the Court to require a new bond in its discretion, and the power conferred on it of revoking the license if such new bond is not given, all seem to indicate that the license is a personal privilege. On the other hand, the statute evidently contemplates that the right to establish a ferry shall be secured to the owner of the land on the bank of the stream over which the ferry is to be established. This appears from the 28th section of the last act, but more explicitly from the law which was in force when this ferry was established. [Aik. Dig. 363, § 27.] When the applicant owns the land on one side of the water course only, he has the right to condemn the land on the other side to obtain a landing. But how could the amount of damages be ascertained if the privilege was to last only during the life of the applicant? Again, the power to grant licenses for ferries is put by the last act upon the same footing with bridges and causeys; yet it could scarcely have been considered by the Legislature that any one would build or construct a causey upon the uncertain tenure of having it for the term of their lives only. It is true, that by the act of 1827, (Aik. Dig 364, § 28,) as it respects bridges and causeys, it appears to have been expected that a contract would be

Lewis, et al. v. The Intendant and Town Council of Gainesville.

made for a term of years by the Court with the applicant, but that only seems to strengthen the argument, as the same act when treating of ferries, is wholly silent as to the time for which it should be held. It appears, indeed, to have been considered that the owners of the land at the place where the ferry was established, have a right to the license upon the conditions prescribed in the act, and that is the only construction which can be put upon the act—when therefore the land upon which a ferry had been established, descended to the heirs of the licensee, the ferry would pass as an incident of the fee, and for the same reason it might be aliened. Such we believe has been the uniform interpretation of this law in this State, and at this day a very large proportion of all the ferries which have been established are in the hands of heirs and purchasers.

In Ladd v. Chotard, Minor, 366, it was held, that the lessee of a ferry was liable for losses in crossing the river, caused by his neglect, and not the owner of the ferry; and the decision is recognized in Taylor v. Rushing, 2 Stewart, 160; yet this is wholly inconsistent with the idea of its being a personal privilege. The principal objection that the heirs or a purchaser from the grantee would not be liable upon the bond of the licensee, and that the law contemplated that some one should always be bound in a bond for the security of travellers, although certainly entitled to weight, is not insurmountable. The Commissioners' Court has the power at any time it thinks proper, to demand a new bond, and this might as well be exacted from the heir, alienee or lessee of the ferry, as from the licensee.

Upon the whole we are of the opinion, that although the act is somewhat obscure; no other conclusion can be attained than that a "license" to establish a ferry is the grant of an incorporeal hereditament, subject to be revoked by the Commissioners' Court, if a sufficient bond is not executed within ten days after such requisition is made.

In regard to the certificate of the record of the Commissioners' Court, the Chancellor appears to have considered that because it was a Court of limited jurisdiction, a different rule would prevail as to the effect of the transcript from what would be accorded to a transcript from a Court of general jurisdiction. This is evidently a mistake. As to the time when

12

the Court is to be held, it is precisely on a footing with the Circuit Court, which must commence its sittings at a particular time, and can sit no longer than it is authorized by law to continue in session.

The transcript discloses that the Court of Roads and Revenue had jurisdiction over the subject, and the time when the Court held its session, can no more be inquired of collaterally, than could the time when the Circuit Court held its session. When it is shown from the record that the Court had jurisdiction, the presumption arises that it had power to sit, unless that fact is controverted in a direct proceeding upon the record. In the case of Cullum v. Casey, 1 Ala. 351, the question came up directly upon error, and we held the decree of the Court void, because there was no authority for the Chancellor to sit when the decree was made; but beyond all question, the decree could not have been impeached collaterally for any cause. Here, as the jurisdiction is shown, the same presumption must arise collaterally as if it were a transcript of the Circuit Court.

It was not necessary to validate the acts of the Commissioners' Court, that it should have adjourned from day to day, down to the time of making this order; if it met at the proper time, an adjournment to any day before the commencement of the next term, would be sufficient, as it is authorized to sit until the business is completed.

From this view it results that the Court erred in the decree made, which is therefore reversed, and the cause remanded for further proceedings.