RODERICK SEAL *v.* CHARLES DONNELLY.

1. FERRY.  *Powers of Boards of Police and Supervisors in respect thereto.*
   While the Constitution gives *full* jurisdiction to Boards of Supervisors over roads, ferries, and bridges, it is a jurisdiction to be exercised in conformity with laws to be enacted by the general legislative assembly of the State, and is not an unlimited and illimitable power to deal with these imporant public interests at their pleasure.  The right to deal with these subjects cannot be

taken from them and confided to any other magistracy, but the mode and manner of their dealing is regulated by and must conform to the sovereign will as announced through the Legislature.

2. SAME. *Property right therein. Power of Supervisors over.*

There is no indefeasible property right in the ferry licenses granted by Boards of Supervisors (formerly Boards of Police) over streams intersecting public roads in this State. Ferries are but parts of the public highway, and Boards of Supervisors have no authority to contract away the power of establishing such other ferries as the public interest may thereafter require. Only the Legislature could venture on the assumption of such a power.

APPEAL from the Chancery Court of Harrison County.

Hon. GEORGE WOOD, Chancellor.

The case is sufficiently stated in the opinion of the court.

*W. P. & J. B. Harris,* for the appellant.

There is only one open question in the case, and that is, whether Boards of County Police, under the constitutional provision giving them "full jurisdiction" over roads, ferries, and bridges, have the right to grant an exclusive ferry franchise. The Constitutions of 1832 and of 1868 contain the same provisions, the same words being used in each, conferring, the one upon Boards of Police, the other upon Boards of Supervisors, "full jurisdiction over roads, highways, ferries, and bridges." The provisions of the various Codes, while providing for the licensing of ferries, do not intend to exclude the right of ownership. They recognize the owners of ferries as such, as distinguished from a mere keeper or licensee. The language used is "owners or keepers," "owners or keepers, or both." See Code 1871, sects. 2380–2386, 2617, 2619. The Code of 1880 contains the same provisions. We must conclude that there can be an owner of a ferry franchise. What power in this State has the right to grant such ownership? Did it reside in the "sovereign people?" If so, when they adopted the Constitution conferring "full jurisdiction" over ferries to Boards of Police, they parted with all authority which they then possessed, and delegated to these Boards of Police the right to do in reference to the subject whatever they could have done. When full jurisdiction is conferred, noth-

ing is reserved. See 52 Miss. 740; 11 Pet. 158. If the power which adopted the Constitution could grant the franchise (and this right, we suppose, will not be disputed), then it was delegated to the Boards of Police by the constitutional provision. The requirement of the bonds is not inconsistent with the private right of ownership. See 10 Barb. 245, where this subject is learnedly and elaborately discussed. The Legislature prescribes no limit of time, where the party to whom the privilege is given by the Board of Police is the owner of the land on both sides of the stream where the ferry crosses. We insist, therefore, (1) this case differs essentially from *Sullivan's Case*, 58 Miss., 798 in the fact that in the case at bar the Board of Police have made a grant of the franchise to the party through whom we claim, her heirs or assigns, and make it unlawful for any one to interfere with the right secured; (2) that in the case at bar we have a grant and not a mere license; (3) that the Legislature recognizes owners of ferries, as distinguished from mere licensees; (4) that the Board of Police had the right to grant the franchise under the provision of the Constitution conferring upon them full jurisdiction of the subject-matter.

*J. B. Harris*, argued the case orally.

*Ben Lane Posey*, for the appellee.

In the first place, the board did not grant or attempt to grant a perpetuity. It fixes no time at all for the duration of the license, and therefore it must be construed to mean, for the term fixed by law, ten years, or, at least, for a reasonable time, and the law defines what is a reasonable time. Grants of public rights and personal privileges are strictly construed. Appellant claims a perpetuity under the order of the Board of Police, and yet the order does not even hint at a perpetuity. The board were proceeding to establish a ferry according to the statute then in force, which is the statute now in force. It is useless to discuss the question as to whether they might have lawfully granted the license for a longer term than ten

years, since they have not done so.   But they had no such
power under the statute.   It makes no distinction between the
owner of the soil and any other person, as to the privilege or
the terms of keeping the ferry, except the owner of the soil
shall have the refusal of the privilege of keeping the ferry.
If he accepts the privilege he receives it on the same terms
and conditions as any other person.   The statute prescribes
that the term of keeping the ferry shall be limited without re-
gard to the fact whether the license is to the owner of the soil
or to any other person.   Code 1857, Art. XLI., chap. 15 ; Code
of 1880 ; *Sullivan* v. *Board of Supervisors*, 58 Miss. 798.
Charles Donnelly (appellee) promptly answered the bill, and
set up his license under the order of the board, and that he
was keeping a ferry under that order and license, and not other-
wise.   And this is his affirmative defence.   Is it sufficient?   The
decision of this court in *Sullivan's Case*, 58 Miss. 798, answers
the question.   Appellant had, if he had anything, only a li-
cense that might be revoked at the pleasure of the Board of
Supervisors.   The Board of Supervisors, in establishing the
new ferry, August, 1881, declare as their reason therefor, that
they find that the public interests and convenience require ad-
ditional ferry facilities over Bayou Bernard, at or near the
village of Handsboro, and they establish this ferry to fulfil
public want.   Of public convenience they were the exclusive
judges.

*Ben Lane Posey*, made an oral argument also.

CHALMERS, J., delivered the opinion of the court.

In 1866 the Board of Police of Harrison County granted to
Janet Bowman " the exclusive right and privilege to keep a
ferry over Bayou Bernard at the place where the public road
from Red Creek to Mississippi City crosses said stream, with
provision that no other person should be permitted to keep a
public ferry over said water-course within one mile of the ferry
of the said Janet."   In 1881 the Board of Supervisors of this
county granted to appellee Donnelly a license to establish

ferry over Bayou Bernard at a place within less than a mile of that established by Janet Bowman, and this bill is brought by appellant Seal, who has, by purchase from said Janet, become the owner of her ferry, to enjoin defendant from acting on the license granted him by the Board of Supervisors.

The question, therefore, presented by the record is this: Could our former Board of Police, or can our present Board of Supervisors, in granting a ferry privilege or license, make a valid stipulation that no rival ferry shall be established within certain limits during a specified period, or during all time, and is such stipulation, if made, binding on them and their successors in office?

We consider this question virtually answered in the negative by the decision in *Sullivan* v. *Supervisors*, 58 Miss. 790. While full jurisdiction is by the Constitution given to Boards of Supervisors over roads, ferries, and bridges, it is a jurisdiction to be exercised in conformity with the laws to be enacted by the general legislative assembly of the State, and not an unlimited and illimitable power to deal with these important public interests at their pleasure. The right to deal with these subjects cannot be taken from them and confided to any other magistracy, but the mode and manner of their dealing is regulated by and must conform to the sovereign will as announced through the Legislature.

Such has been the practice as to all the powers conferred by our several Constitutions on these county boards since their creation by the Constitution of 1832, and the exercise of their powers has uniformly been governed by the regulations prescribed by the Legislature. *Arrighi* v. *Supervisors*, 54 Miss. 668.

As was shown by the decision in *Sullivan* v. *Supervisors*, *supra*, our statutes with regard to ferries, from the earliest period down to the present day, give no countenance to the idea of there being an indefensible property right in the ferry licenses granted by the Boards of Police or Supervisors over streams intersecting public roads in this State, and certainly they lead

even less to the assumption of an authority by the boards to contract away the power of establishing such other ferries as the public interests may thereafter require. Ferries, as was said in *Sullivan's Case, supra,* are but a part of the public highway, and it will hardly be contended that the Board of Supervisors can, by contract, stipulate that not more than one public road shall ever be established within a certain portion of the county. Nothing short of the sovereign power of the State could venture upon the assumption of such authority.

Affirmed.