# MONTGOMERY, ET AL, *v.* MULTNOMAH RAILWAY CO.

FERRIES, JURISDICTION OF COUNTY COURT TO ESTABLISH.—The primary object of the statute conferring jurisdiction upon the county courts to establish roads and license ferries for the transportation of persons and property across streams, which obstruct land travel using public ways, is to secure the public accommodation. For the attainment of this end, but as subordinate to it, when a ferry franchise is granted, the right to take lawful tolls is conferred as an equivalent for the obligations to accommodate the traveling public. Although the taking of such tolls is *privati juris*, and incident to the franchise, a ferry is *publica juris* and cannot be created without a license, and is a thing of public interest and use. It can only exist in connection with some highway or place where the public have rights. The grant of a ferry franchise over a stream, to and from a place where there is no highway, or in which the public have no rights, would be void and inoperative.

IDEM—PRIVILEGES GRANTED BY LICENSE.—When the county court has exercised its jurisdiction by granting a license for a ferry, and a ferry is established, forming a connecting link in the public highway, it has exhausted its jurisdiction as to such highway or places connected, while such franchise exists. Such franchise gives to the person licensed the exclusive privilege of transporting all persons and property between such places. The county court cannot establish another ferry between such places or highways, or between places just outside of or beyond them, designed to accommodate the same traveling public, without violating the exclusive privileges secured by the franchises granted to the ferry already established.

SALE OF FERRY LICENSE.—Whether a ferry license can be assigned without the consent of the granting power, and whether the county court granting the license has power to give such consent, *quære*. If such assignment is void, the right to object to the same, and to the exercise of the franchise by a party to whom it was not originally granted, can only be exercised by the state officers in an appropriate proceeding.

APPEAL from Multnomah County.

*Geo. H. Williams,* for appellants.

*C. B. Bellinger,* for respondents.

By the Court, LORD, J.:

The existence of the plaintiffs' ferry, known as the Albina

ferry, is admitted by the record. The petition of the defendants rests their application in chief upon the insufficiency of the facilities, as already existing and established, for the accommodation of the public in crossing the river, between the termini of the Albina ferry. As a link to connect the line of travel between these points, the averment is that the facilities are too limited to meet the present and growing demands of the public convenience. The order of the county court not only assumes the legal existence of the ferry, but undertakes, on account of the proximity of the Montgomery ferry, which its order licenses and establishes to accommodate the same line of travel, and the consequent liability apprehended in the exercise of its franchise of interfering with the passage of the boats of the Albina ferry and the approaches to its landings, to provide for its protection.

The view we take of the question to be adjudicated, as thus presented by the record, renders it unnecessary to notice some of the matters discussed in the briefs of counsel. We shall only examine the record for the purpose of determining whether the county court, to whom the law has confided the authority to grant licenses for establishing ferries upon the conditions therein expressed, has exceeded its jurisdiction, or exercised its functions erroneously upon the case made by the record in granting the Montgomery license. The exclusive right of the county court in a proper case to grant a ferry license, when satisfied the same is necessary for the public convenience, is not questioned. The contention is as to the limits within which this power or jurisdiction may be exercised with regard to a ferry already licensed and established. Our statute provides that the county court may grant a license to any person entitled and applying therefor, to keep a ferry across any lake or stream within its

respective county, upon being satisfied that a ferry is necessary at the point applied for, which license shall continue in force for a term to be fixed by the court, not exceeding five years. (Gen. L. Or., sec. 40, p. 731.) But it further provides that every person licensed to keep a ferry shall have the exclusive privilege of transporting all persons and property over and across the stream where such ferry is established, and shall be entitled to all the fare arising therefrom. (*Id.*, sec. 51, p. 733.)

It is argued that the exclusive privileges which attach to the grant of a license by virtue of this last clause, limit and restrict the jurisdiction of the county court in granting ferry licenses to such places only as will not affect injuriously an existing ferry licensed and established by its authority.

This proceeds from the theory that the jurisdiction conferred by the former provisions, and the restrictions placed upon its exercise by the latter, when taken and construed together, so as to give them one effect only, declares or adopts the common-law doctrine as applied to ferry franchises—an able and exhaustive *resume* of which may be found in the dissenting opinion of Mr. Justice Story in the *Charles River Bridge* v. *Warren Bridge,* 11 Pet., 506. It is also contended that the doctrine of the law as applied to ferries by the reasoning of the majority in the decision of the Warren Bridge case is not opposed to, but sustains and fortifies this construction. This position is that the plaintiffs failed in that case because their charter gave them no exclusive privileges, and the court held as against the public such privileges could not be implied, but *e converso*, where such privileges are expressly conferred the doctrine of the common law would apply,

On the other hand, it is contended that the "exclusive

privileges" conferred by our statute are confined to the ferry landings, the place "where such ferry is established," and does not extend on each side so as to prevent the licensing of contiguous and rival ferries, when the county court is "satisfied" the public accommodation requires it; that, in effect, the statute but reiterates in express terms what was decided in the Warren bridge case, and confines the "exclusive privileges" to the landings, or place "where such ferry is established," and that no exclusive privileges can be implied beyond this as against the public, or jurisdiction of the county court to license other ferries continguous, whatever may be the effect of such competition in withdrawing tolls. In our judgment, the primary object to be accomplished by our statute in conferring jurisdiction upon county courts in their respective counties to establish roads and license ferries for the transportation of persons and property across streams which obstruct land travel using public ways, is to secure the public accommodation. For the attainment of this end, but as subordinate to it, when a ferry franchise is granted, the right to take lawful tolls is conferred as an equivalent for the obligations to accommodate the traveling public.

Although the taking cf such tolls is *privati juris* and incident to the franchise, "a ferry is *publica juris*, and cannot be created without a franchise, and is a thing of public interest and use." (*Att'y Gen.* v. *Boston*, 123 Mass., 478.)

As a link in the chain of transportation on dry land, a ferry forms a part of a public highway, or a connecting link between places in which the public have rights, and as such it is a thing of public interest, and in which the public have the right of way or use on paying certain specified tolls, regulated and prescribed by public authority. This is evi-

dent from the nature of the franchise, and the uses and purposes for which ferries are licensed and established.

A ferry, says Mr. Dane, vol. 2, p. 683, "forms a part of a public passage or highway wherever rivers or waters are to be passed in boats, and being a part of the highway, any obstruction of the use thereof is a nuisance." (Angell on Highways, sec. 461.) The definition of a ferry, as given by Lord Abinger, in *Huzzie* v. *Field*, 2 C., M. & R., 432, 442, is this: A public ferry is a public highway of a special description, and its termini must be in places where the public have rights, as towns or vills, or highways leading to towns or vills. In *Newton* v. *Cabitt*, Mills, J., in delivering the judgment of the court, said: "A ferry exists in respect of persons using a right of way where the line of way is across water. There must be a line of way on land coming to a landing place on the water's edge," etc.

In *Burlington and Henderson Co. Ferry* v. *Davis*, 48 Iowa, 133, the court says: "A ferry is in some sense an extension of a public road." Mr. Cooley in his work on Constitutional Limitations, 593, says, in reference to the right of the states to lawfully establish ferries over navigable waters, that "this also is only the establishment of a public highway." And in *Sullivan* v. *Board of Supervisors*, 58 Miss., 799, Cooper, J., in delivering the opinion of the court, said: "Where a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin again on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along other portions of it, but as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most economical in many cases is the

ferry." See, also, *Hudson, et al.* v. *Cusro Land and Immigration Co.,* 47 Tex., 56; *Seal* v. *Donnelly,* 60 Miss., 662; 4 Jones Law, [N. C.,] 282, 285; *Hartford Bridge Co.* v. *Union Ferry Co.,* 29 Conn., 229.) The principle to be deduced from these authorities of the franchise and the uses and purposes for which a ferry is licensed and established is that a ferry can only exist in connection with some highway or place where the public have rights.

The grant of a ferry franchise for the transportation of persons and property across a stream to and from a place where there is neither highway, or in which the public have no rights, would be void and inoperative. The object of a ferry being to connect highways or places in which the public have rights, when intersected by streams, it becomes, when licensed and established, a part of each highway or line of travel between such places. When, therefore, the county court has exercised its jurisdiction by granting a license at the suggestion of the public convenience, and a ferry is established connecting such highways or places, thus forming a continuous line of transportation, it has exhausted its jurisdiction as to such places or highways while such franchise exists. As a link or part of the highway in the line of travel between such places or highways, the franchise gives, under our statute, to the person licensed to keep the ferry the exclusive privilege of transporting all persons and property between such places or highways. The county court cannot, at such places or highways, establish another ferry without violating the exclusive privileges secured by the franchise granted to the ferry already established, and which forms a part of such highway, and is designed and required to accommodate all persons, on paying the required tolls, passing along the line of travel between such places or highways. The reason is that the ferry is established for

the purpose of taking up the highway, so to speak, and uniting it into one continuous highway or line of travel for the public accommodation, and as a protection for the expense and outlay in thus serving the public convenience, the statute gives the exclusive privilege of carrying all persons and property coming on the line of such highway to the river bank for transportation, the place "where such ferry is established." There is no room to establish another ferry, for the ferry already established, by forming a part, continues the highway over the water, and occupies that place. In the sense here applied, it may be said that a highway is already laid out over the water "where such ferry is established" during the period for which the franchise is granted, and until it expires, or be revoked, or forfeited, the county court has no jurisdiction to establish another ferry at such place, designed to accommodate the travel passing over such highway "where such ferry is established," for the statute secures the exclusive privilege as to this to the ferry already licensed.

Construing the statute in the strictest sense, by confining the "exclusive privilege" to the place "where such ferry is established," and it being limited either to a highway or a place in which the public have rights, of which the ferry forms a part, the conclusion seems inevitable that the county court, having exercised its jurisdiction by the grant of a license to keep a ferry at such place or highway, cannot exercise it again while such franchise exists. Just outside or beyond this, and not for the purpose of connecting other places or highways in which the public have rights of access, is not within the purview of the authority conferred on the county court by the statute to grant franchises to keep ferries. That would be to establish a ferry where there was neither highway nor public place, and without which the public could not be accommodated, and would necessarily be

inoperative and void.  Now the ferry which is sought to be established is shown by the record to be designed to accommodate the same traveling public for which the Albina ferry was licensed.  It founds its claims to the franchise upon the limited facilities and imperfect accommodations furnished by the existing ferry, to meet the present and growing demands of the traveling public at the place where it is established, and, therefore, the right and the need to establish another ferry at such place for the convenience of the public.  There is no pretense that it will form connection with any other place or highway in which the public have rights than the highway connected by the Albina ferry, and of which it forms a part.

It only claims not to occupy the particular spot where the other ferry lands, but it does not deny its proximity to it, and object to serve the same custom, and to form a part of the same highway which the franchise of the Albina ferry now covers.  And this is assumed and recognized in the order of the court granting the license to it, for the order only seeks to protect the landings and the passage of the boats of the Albina ferry, but not the exclusive privilege secured to the Albina ferry by the statute as a part of the highway, of transporting all persons and property where it is established.  It is the proximity which carries passengers from the same place as where the Albina ferry is licensed, and collects tolls from them, which infringes and violates the exclusive privileges secured to its franchise.  When the proximity is such as to produce this result, it is in effect and substance establishing another ferry at the same place as where the Albina ferry is established, which the county court cannot do without violating the statute which gives these exclusive rights to the Albina ferry at the place where

established, and therefore the county court is inhibited from licensing another ferry at that place.

When it is considered that the period for which a ferry license is granted is not to exceed five years, the outlay and expense necessarily involved, the duty the law imposes of keeping safe and commodious boats for transportation, the right of regulating its tolls, and the bond required to be given to better secure and enforce the faithful performance of all the duties and obligations the law imposes and attaches to the franchise in its interests and for the benefit of the public convenience and accommodation, a just and satisfactory reason is found why our statute secures to every person licensed to keep a ferry the exclusive privilege of transportation across the stream where such ferry is established.

In the case before us, we are not concerned with the power or jurisdiction of the court to establish ferries to connect other highways or places, although the effect of establishing such by reason of vicinity might be to divert the custom and to diminish the tolls of an existing ferry; nor of the effect of a change of circumstances produced by an increase of population, or of a new neighborhood requiring the opening of new highways, which would carry with it the right to continue the line of these highways across a water highway. We are simply construing our statute with regard to the record before us, for the purpose of ascertaining whether the county court can grant a license to establish a ferry in substance at the same place where one is already licensed and established. The statute gives the exclusive privilege of transportation at the place where such ferry is established, and the establishing of another in substance at the same place is a contradiction of such exclusive privileges, and beyond the power of the court to do. Whether these exclusive privileges conferred by the statute extend beyond

the place where the ferry is established, and include the common-law doctrine of exclusive rights of transportation to such an extent on each side as to prevent near and injurious competition, as contended, is not presented by the record before us, nor decided.

We only decide, in construing our statute upon this record, that the court was without authority to grant the Montgomery license, and here we think the case ought properly to have ended. But in the circuit court, it seems that an objection was raised and argued for the first time as to the validity of the assignment of certain interests in the Albina ferry licenses to the Multnomah Railroad Company; and the court held that a ferry license being a personal trust, was not assignable, and therefore such assignment was void.

As this question was argued with much zeal and great ability, we shall only briefly advert to it, although we do not see how the validity of that transaction was inquirable upon the record in the proceeding. There is no doubt some contrariety of opinion exists in the authorities upon the subject. The Albina ferry license was not granted to the riparian owners. And in *Knott* v. *Frush*, 2 Or., 237, it was held that a ferry license granted to another than the riparian owner is a mere personal trust, upon conditions, and that his liability cannot be removed by substitution, but that such license terminates upon the decease of the person to whom it was granted. This decision was the subject of much adverse criticism by counsel. As authorities to sustain its view, it cites *Monroe* v. *Thomas*, 5 Cal., 470, and *Thomas* v. *Armstrong*, 7 Cal., 286; and these in turn have been approved and followed in *Wood, et al.* v. *Truckee Turnpike Co.*, 24 Cal., 464, and *People* v. *Duncan*, 41 Cal., 570. The license is regarded as a special privilege conferred by government upon the individual, and which does not be-

long to the citizen generally by common right. The grant of such franchise or special privilege to the individual is considered the bestowal of a personal trust and confidence, which cannot be assigned nor be the subject of sale on execution. (*Sullivan* v. *Board of Supervisors*, 58 Miss., 791; *Seal* v. *Donnelly*, 60 Miss., 662; *Rogers* v. *McCoy*, 29 Mo., 267; *The Mavent*, 1 Sprague, 24; *Arthur* v. *The Commercial and Railroad Bank of Vicksburg*, 9 Sm. & M., 420; *State* v. *Rives*, 5 Ind. L., 307; *Amart* v. *Pittsburg Turnpike Co.*, 13 Sergt. & R., 210; *Lombard* v. *Cheever, et al.*, 3 Gilman, 473; Herman on Executions, secs. 131 and 361; Angell & Ames on Corp., sec. 191; Redfield on Railways, 419, 422; Freeman on Executions, sec. 179.) And again it has been said that a ferry license is in the nature of an appointment to an office, having certain fees annexed to it, to be held at the pleasure of the appointing power. (*Day* v. *Stetson*, 8 Me., 370.) On the other hand, it is contended that the right given under a ferry license is a franchise, which is as much property as any other incorporal hereditaments. That franchise was, by the common law, said to be a branch of the king's prerogative in the hands of the subject. (2 Shars. Bl. Com., 37.) But that in America, it is understood particular privilege conferred by grant from the government and vested in individuals. (3 Kent's Com., 458; *People* v. *Utica Ins. Co.*, 15 Johns., 387.) Chancellor Kent says that "an estate in such franchise, and an estate in lands, rest upon the same principle, being equally grants of a right or privilege for an adequate consideration." (3 Kent's Com., 458.) In *Conway* v. *Taylor's Executor*, 1 Black, 632, Mr. Justice Swayne said: "A ferry franchise is as much property as a rent or any other incorporeal hereditament or chattel or realty. It is clothed with the same sanctity and entitled to the same protection as other prop-

erty." In *Lippincott* v. *Alexander*, 27 Iowa, 460, it was held that a ferry license is not vacated nor the franchise lost by the death of the party to whom it was granted, but passes to his representatives. This decision is in direct conflict with *Knott* v. *Frush*, *supra*, and disapproves the rea· soning of the authorities cited to sustain it. It should be observed, however, that the Iowa statute makes certain provisions for the sale of such franchise as real property upon execution, which do not exist in our statute, and which were referred to in the decision as strengthening the views therein expressed.

In *Billings* v. *Breenily*, 45 Mich., 70, it was held that the franchise of keeping a ferry is property, having the valuable incidents of other kinds of property and transferable from the original grantee to others, subject to conditions lawfully imposed, and to such government control as results from its public nature. (*Bowman's Devisees* v. *Walker*, 2 McLean, 376; *Felton* v. *Deall*, 22 Vt., 170; *Benn* v. *Mayor, et al*, 10 Barb., 223; *Ladd* v. *Choline*, 1 Minor, [Ala.,] 366; *Lewis* v. *Intendant and Town Council of Gainsville*, 7 Ala., 85; *Peter* v. *Kendal*, 7 Barn. & Cress., 703; *Willoughby* v. *Hosierdy*, 12 C. B., 742; *Dundy* v. *Chambers*, 23 Ill., 370.)

It thus appears that some diversity of opinion exists in the authorities as to the right to sell or assign a ferry franchise, or whether the same is vacated by death, and that *Knott* v. *Frush*, *supra*, is not without authority to sustain it. That it may be done when the consent of the power that granted it has 'been obtained, does not seem to be questioned. But whether the county court to whom the legislature has delegated the power to grant ferry licenses is authorized to give its consent to a sale or assignment of a ferry license upon filing the required bond, or by filing such

bond and the acceptance of the same by the court, the assignment would be unassailable, we are not prepared nor is it necessary for us to decide, except that it may not be amiss for us to observe that the statute imposes no restrictions upon the sale or transfer of the franchise; nor is there any promise that, upon the death of the party to whom the license was issued, it shall be vacated and the franchise lost. The statute is simply silent upon that subject. But whether the assignment is void, or the effect of an assignment would be to vacate the license, we do not see how such matters are inquirable in this proceeding. The record both as to the petition and the order of the court recognizes the validity of the existing franchise. No question is raised by the record about the Albina ferry license, or any sale or assignment of its franchise. The only question involved was the authority or power of the court to grant the Montgomery license.

That was the object of and for which the writ of review was sued out, and the only matter necessary to be passed upon. When that was done, the court had exhausted its power upon the case made by this record, and decision of matters *dehors* it, without reference to the correctness of the principle decided, was a nullity and ought not to stand. Besides, it would seem to follow that if the franchise is a personal trust and not assignable without the consent of the granting power, as argued and claimed, then the right to object to the transfer of the franchise, and its exercise by a party to whom it was not originally granted, was a right affecting the public which belongs to its officers to take advantage of by an appropriate proceeding, and could not be collaterally assailed here. (*People* v. *Duncan*, 41 Cal., 508;

*Connar* v. *Paxon*, 1 Black, 168; *Edmonson* v. *De Kalb Co.*, 51 Ala., 101.)

The judgment declaring the Montgomery license void is affirmed, but in all other respects reversed.