[Filed February 13, 1885.]

# HACKETT AND THE MULTNOMAH RY. CO. v. WILSON & MONTGOMERY.

JURISDICTION TO LICENSE FERRIES — TOLLS. — The primary object of our statute, conferring jurisdiction upon county courts to license ferries, is to secure the public accommodation ; the right to take tolls is conferred as an equivalent for the obligation to accommodate the traveling public.   Although the right to take tolls is *privati juris* and incident to the franchise, a ferry is *publici juris* and cannot be created without a license.

FERRIES PART OF HIGHWAY — RIGHTS OF PUBLIC. — A ferry forms part of, and can only exist in connection with a public highway, or as a connecting link between places in which the public has rights, on paying the tolls prescribed by public authority.

COUNTY COURTS — EXTENT OF JURISDICTION. — When the county court has exercised its authority by granting a license at the suggestion of the public convenience, and a ferry is established connecting such highway or places, it has exhausted its jurisdiction as to such highways or places while such franchise exists, and cannot license another ferry at substantially the same place.

ASSIGNMENT OF LICENSE — CANNOT BE QUESTIONED COLLATERALLY. — Whether a ferry license is assignable or not, *quære;* but if it is a personal trust, not assignable without the consent of the granting power, the right to object to its transfer, or its exercise by a party other than the original licensee, is a right affecting the public, to be taken advantage of by its officers, and cannot be collaterally questioned. .

MULTNOMAH COUNTY.   Both parties appeal.   Judgment modified.

. On the 4th day of December, 1882, R. B. Wilson and J. B. Montgomery filed their petition with proof of notice in the county court of Multnomah County, for a ferry license between

Portland and Albina, across the Willamette River, alleging, amongst other reasons, that the present facilities for crossing said river at or anywhere near said points are limited and of small capacity, and particularly insufficient in respect to the landings on both shores. That said landings are steep, and so poorly arranged that any kind of loaded teams have great difficulty in passing over them. That the petitioners being respectively the owners of the lands and landing places of the proposed ferry, and of lands adjoining, are in condition, and are desirous of constructing permanent and commodious landings, easy of approach and suitable to accommodate all traffic.

On the 6th day of December, the Multnomah Railway Company, M. A. and Nathan Hackett, filed their remonstrance to the Montgomery petition, setting forth that they are the owners of the Albina Ferry, and alleging that the Montgomery petition prays for a ferry license between the points for which the license of the Albina Ferry is issued, and alleging further, that the Albina Ferry license was issued at the October term of the county court, 1880, for five years to M. A. Hackett and Norman Finch. That it was granted upon the petition, among others, of R. B. Wilson, J. B. Montgomery, and William Reid, and that in addition to such petition said Montgomery, Reed, and Wilson accepted in writing service of the notices required by law to be served upon the shore-owners; that said ferry had been established and maintained up to the present time.

That in November, 1882, Messrs. Hackett, Foster, and Moore, being the owners of said ferry, a two thirds interest was purchased by the Multnomah Railway Company for $16,000. That subsequent to said purchase, another and larger boat had been placed upon the route, and its capacity is stated. That the granting of the license prayed for, and the establishing of another ferry, will destroy the Albina Ferry and property.

On January 4, 1883, the county court made its decision that a ferry was necessary at the points named, and that it could be operated without *interfering with the operation of any other ferry,* and directing a license to issue as prayed for.

Thereupon the remonstrators filed their petition for a writ of

review, and the record and proceedings were certified to the Circuit Court.

Upon the hearing in the Circuit Court, counsel for Montgomery and Wilson for the first time made the objection that the remonstrators' license was illegal for want of proof disclosed in the record of the posting of notices of the application, and they made the further objection that the Multnomah Railway Company had no standing, for the reason that a ferry franchise is not assignable, and therefore the assignments to it were void.

The Circuit Court dismissed the petition and review as to the railway company, on the ground last stated, but as to the other petitioners the writ was sustained and the order of the Circuit Court reversed.

From this judgment Wilson and Montgomery appeal as to all the petitioners, and the Multnomah Railway Company appeals from so much of the order as dismissed the writ of review as to it.

*Smith, Willis, Gearin & Bellinger,* for Multnomah Railway Company.

A ferry license is a franchise. It is a public privilege conferred upon a subject or citizen, and it is the policy of the State that in dealing with such matters the proceedings ought to be conducted publicly, not as a matter affecting private rights, but as a matter of policy. And this is one test whether a statute is directory or mandatory. If the act be within the power of the sovereign, and a strict compliance with the prescribed procedure does not work an injury to private interests, such strict compliance is not indispensable. (*Merchant* v. *Langworthy,* 6 Hill, 646.) A right of ferry is a thing inherent in the sovereign. It does not emanate from the soil. (*Grant* v. *Drew,* 1 Oreg. 38; *Peter* v. *Kendall,* 6 Barn. & C. 703; 3 Kent Com. 424, n., 458; Wash. Real Prop. 264; *Beckley* v. *Learn,* 3 Oreg. 470.) An order granting a ferry license is not void because it fails to show that the licensee is the owner of one or both sides of the river on which the ferry is located, or that the prior right has been divested. (*Collins* v. *Ewing,* 51 Ala. 102.) A literal compliance with the statute as to posting notices upon an applica-

tion for a ferry is not necessary. (*Drew* v. *Gant*, 1 Oreg. 197.) Montgomery and Wilson having petitioned the county court for the establishment of the plaintiff's ferry, are estopped to deny the legality of the plaintiff's license. (*City of Burlington* v. *Gilbert*, 31 Iowa, 356; *B. C. R. & M. R. Co.* v. *Stewart*, 39 Iowa, 267; *Kellogg* v. *Ely*, 15 Ohio St. 66; *Ferguson* v. *Landram*, 5 Bush, 230.) The legality of plaintiff's ferry cannot be inquired into except upon a direct proceeding therefor. (*Conner* v. *Paxson*, 1 Blackf. 168; *Edmonson* v. *De Kalb Co. supra; Churchill* v. *Grundy*, 5 Dana, 99.) The recognition of plaintiff's ferry by the county court imports its legal existence as a ferry. (*Smith* v. *Harkins*, 3 Ired. Eq. 613; S. C. 44 Am. Dec. 83.) A ferry license is assignable. (*Billings* v. *Breinig*, 45 Mich. 70; *Lippencott* v. *Allander*, 27 Iowa, 460; *Dundy* v. *Chambers*, 23 Ill. 370; *Filch* v. *Coyne*, 65 Ill. 83; *Smith* v. *Harkins, supra; Willoughby* v. *Horridge*, 16 Eng. L. & Eq. 437; *Thompson* v. *The People*, 23 Wend. 574; *Bowman* v. *Wathen*, 2 McLean, 376; *Rerick* v. *Kern*, 14 Serg. & R. 267; *Benson* v. *The Mayor*, 10 Barb. 240.) A second ferry cannot be established without compensation to the one already existing. (*Enfield Toll Bridge Co.* v. *Hartford & N. H. R. R. Co.* 17 Conn. 40; *McRoberts* v. *Washburn*, 10 Minn. 23.) The assignment of a franchise cannot be questioned either collaterally or by any individual whose rights are not affected by it. (*Crolley* v. *Minneapolis & St. L. Ry. Co.* 30 Minn. 541; *Patrick* v. *Ruffners*, 2 Rob. (Va.) 209; S. C. 40 Am. Dec. 745; *Elizabeth City Academy* v. *Lindsey*, 6 Ired. 476; S. C. 45 Am. Dec. 500; *Oakland R. R. Co.* v. *Oakland B. & F. V. R. R. Co.* 45 Cal. 365; *Owens* v. *Roberts*, 6 Bush, 608; *Thompson* v. *R. R. Co.* 3 Sand. 625; *Matthew* v. *Offley*, 3 Sum. 115.)

*J. G. Chapman*, and *Sidney Dell*, for M. A. and Nathan Hackett.

The office of the writ of review is not to review questions of jurisdiction alone, but errors of proceeding or excess of jurisdiction in judicial proceedings. (See *Burnett* v. *Douglas Co.* 4 Oreg. 388; *Canyonville & G. Road Co.* v. *Douglas Co.* 5 Oreg.

281; *Douglas Co. Road Co.* v. *Douglas Co.* 6 Oreg. 303; *Mountain* v. *Multnomah Co.* 8 Oreg. 470; *Poppleton* v. *Yamhill Co.* 8 Oreg. 347; *Knott Bros.* v. *Jefferson St. Ferry Co.* 9 Oreg. 530.) The license granted by the county court to M. and W. is void. There is no tribunal to enforce the conditions upon which such license was granted. (*Carson* v. *Stone,* 1 Oreg. 41.) A ferry franchise is property. (*McRoberts* v. *Washburn,* 10 Minn. 27; *Benson* v. *The Mayor,* 10 Barb. 228.) If the existing ferry furnished insufficient accommodations to the public, the county court might revoke their license therefor, but could not for that or any cause establish another ferry. (*Lamar* v. *Commrs. of Marshall Co.* 21 Ala. 772.)

*Geo. H. Williams,* and *H. T. Bingham,* for defendants Wilson and Montgomery.

The grant by a county court of a license to keep a ferry is not a contract, but a privilege, subject to any modification the county court may see fit to make. (*Sullivan* v. *Lafayette Co.* 58 Miss. 790; *Charles River Bridge* v. *Warren Bridge,* 11 Peters, 536.) Persons intending to apply for license to keep a ferry are required to " give notice of such intention by posting up at least three notices, in public places, in the neighborhood where the ferry is proposed to be kept, twenty days prior to any regular term of the county court at which the application shall be made." (Code, p. 731, § 43.) No such notices were given by Hackett and Finch, and without such notice the county court had no jurisdiction to grant them a license. The obtaining of a license to keep a ferry is exclusively a statutory proceeding, and the statute must be strictly pursued. (*Minard* v. *Douglas Co.* 9 Oreg. 206; *Robinson* v. *Mathwick,* 5 Neb. 255; *State* v. *Otoe Co.* 6 Neb. 132; *Doody* v. *Vaughn,* 7 Neb. 28; *Damp* v. *Dane,* 29 Wis. 428.) This court has held that a ferry license is a mere personal trust bestowed upon the grantee. (*Knott* v. *Frush,* 2 Oreg. 237. See also *Monroe* v. *Thomas,* 5 Cal. 470; *Thomas* v. *Armstrong,* 7 Cal. 287; *Sullivan* v. *Lafayette Co.* 58 Miss. 790.) A

mere license to a party, without having assigns or equivalent words to them showing that it was meant to be assignable; is only the grant of a personal power to the licensee, and is not transferable by him to another. (*Troy Iron & Nail Factory Co.* v. *Corning,* 14 How. 217. See also *Brooks* v. *Byam,* 2 Story, 525.)

LORD, J.—The existence of the plaintiffs' ferry, known as the "Albina Ferry," is admitted by the record. The petition of the defendants rests their application in chief upon the insufficiency of the facilities as already existing and established for the accommodation of the public in crossing the river between the *termini* of the Albina Ferry. As a link to connect the line of travel between these points, the averment is that the facilities are too limited to meet the present and growing demands of the public convenience. The order of the county court not only assumes the legal existence of this ferry, but undertakes, on account of the proximity of the Montgomery Ferry, which its order licenses and establishes to accommodate the same line of travel, and the consequent liability apprehended in the exercise of its franchise of interfering with the passage of the boats of the Albina Ferry and the approach to its landings, to provide for its protection.

The view we take of the question to be adjudicated, as thus presented by the record, renders it unnecessary to notice some of the matters discussed in the briefs of counsel. We shall only examine the record for the purpose of determining whether the county court, to whom the law has confided the authority to grant licenses for establishing ferries upon the conditions therein expressed, has exceeded its jurisdiction, or exercised its functions erroneously, upon the case made by the record, in granting the Montgomery license. The exclusive right of the county court in a proper case to grant a ferry license, when satisfied the same is necessary for the public convenience, is not questioned. The contention is as to the limits within which this power or jurisdiction may be exercised with regard to a ferry licensed and established. Our statute provides that the county court may grant a license to any person entitled and applying therefor, to

keep a ferry across any lake or stream within its respective county, being satisfied that a ferry is necessary at the point applied for, which license shall continue in force for a term to be fixed by the court, not exceeding five years. (Gen. Laws Oreg. § 40, p. 731.) But it further provides that every person licensed to keep a ferry shall have the exclusive privilege of transporting all persons and property across the stream where such ferry is established, and shall be entitled to all the fares arising therefrom. (Gen. Laws Oreg. § 51, p. 733.)

It is argued that the exclusive privileges which attach to the grant of a license by virtue of this last clause, limits and restricts the jurisdiction of the county court in granting licenses to such places only as will not affect injuriously an existing ferry licensed and established by its authority. This proceeds upon the theory that the jurisdiction conferred by the former provision, and the restrictions placed upon its exercise by the latter, when taken and construed together, so as to give them one effect only, declare or adopt the common-law doctrine as applied to ferry franchises; an able and exhaustive *resume* of which may be found in the dissenting opinion of Mr. Justice Story in *Charles River Bridge* v. *Warren Bridge,* 11 Peters, 506. It is also contended that the doctrine of the law as applied to ferries by the majority, in the decision of the *Warren Bridge Case,* is not opposed to, but sustains and fortifies this construction. This position is that the plaintiffs failed in that case because their charter gave them no exclusive privileges, and the court held, as against the public, such privileges could not be implied; but *e converso,* where such privileges are expressly conferred, the doctrine of the common law would apply. On the other hand, the " exclusive privileges " conferred by our statute are confined to the ferry landings—the place " where such ferry is established "—and does not extend on each side, so as to prevent the licensing of contiguous and rival ferries, when the county court is "satisfied" the public accommodation requires it. That, in effect, the statute but reiterates in express terms the *Warren Bridge Case,* and confines the "exclusive privileges" to the landings or place "where such

ferry is established," and that no "exclusive privileges" can be implied beyond this, as against the public, or jurisdiction of the county court to license other ferries contiguous, whatever may be the effect of such competition in withdrawing tolls.

In our judgment, the primary object to be accomplished by our statute in conferring jurisdiction upon county courts in their respective counties to establish roads, and to license ferries for the transportation of persons and property across streams which obstruct land travel using public ways, is to secure the public accommodation. For the attainment of this end, but as subordinate to it, when a ferry franchise is granted, the right to take lawful tolls is conferred as an equivalent for the obligation to accommodate the traveling public. Although the taking of such tolls is *privati juris* and incident to the franchise, "a ferry is *publici juris*, and cannot be created without a license, and is a thing of public interest and use." (*Attorney-General* v. *Boston*, 123 Mass. 478.) As a link in the chain of transportation on dry land, a ferry forms a part of a public highway, or a connecting link between places in which the public has rights, and as such it is a thing of public interest, and in which the public have the right of way or use on paying certain specified tolls, regulated and prescribed by public authority. This is evident from the nature of the franchise, and the uses and purposes for which ferries are licensed and established. "A ferry," says Mr. Dane, vol. 2, p. 683, "forms a part of a public passage or highway wherever rivers or waters are to be passed in boats," and "being a part of the highway, any obstruction of the use thereof is a nuisance." (Ang. Highw. § 416.) The definition of a ferry, as given by Lord Abinger in *Huzzey* v. *Field*, 2 Cromp. M. & R. 432, 442, is this:—

"A public ferry is a public highway of a special description, and its *termini* must be in places where the public have rights, as towns or vills, or highways leading to towns or vills."

In *Newton* v. *Corbett*, Willis, J., in delivering the judgment of the court said:—

"A ferry exists in respect of persons using a right of way where the line of way is across water. There must be a line of

way on land coming to a landing place on the water's edge,'' etc.

In *Burlington & H. Ferry Co.* v. *Davis*, 48 Iowa, 133, the court say : " A ferry is in some sense an extension of a public road." Mr. Cooley, in his work on Constitutional Limitations, 593, says in reference to the right of the States to lawfully establish ferries over navigable waters, that " this, also, is only the establishment of a public highway." And in *Sullivan* v. *Lafayette Co.* 58 Miss. 799, Cooper. J., in delivering the opinion of the court, said :-

" Where a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along other portions of it; but as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most economical in many cases is by ferry." (See also *Hudson* v. *Cuero Land & E. Co.* 47 Tex. 56; *Seal* v. *Donnelly*, 60 Miss. 662; *Taylor* v. *Wilmington & M.. R. Co.* 4 Jones (N. C.) 282, 285; *Hartford Bridge Co.* v. *Union Ferry Co.* 29 Conn. 229.)

The principle to be deduced from these authorities of the nature of the franchise, and the uses and purposes for which a ferry is licensed and established, is that a ferry can only exist in connection with some highway or place where the public have rights, and the grant of a ferry franchise. The grant of a ferry franchise for the transportation of persons and property across a stream to and from a place where there is no highway, or in which the public have no rights, would be void and inoperative. The object of a ferry being to connect highways or places in which the public have rights when intersected by streams, it becomes, when licensed and established, a part of such highway or line of travel between such places. When, therefore, the county court has exercised its jurisdiction by granting a license at the suggestion of the public convenience, and a ferry is established connecting such highways or places, thus forming a con-

XII. OREG.— 3.

tinuous line of transportation, it has exhausted its jurisdiction as to such places or highways while such franchise exists. As a link or part of the highway in the line of travel between such places or highways, the franchise gives, under our statute, to the person licensed to keep the ferry the exclusive privilege of transporting all persons and property between such places or highways. The county court cannot, at such places or highways, establish another ferry without violating the exclusive privileges secured by the franchise granted to the ferry already established, and which forms a part of such highway, and is designed and required to accommodate all persons, on paying the required tolls, passing along the line of travel between such places or highways. The reason is that the ferry is established for the purpose of taking up the highway, so to speak, and uniting it into one continuous highway or line of travel for the public accommodation; and as a protection for the expense and outlay in thus serving the public convenience, the statute gives the exclusive privilege of carrying all persons and property coming on the line of such highway to the river bank for transportation, at the place "where such ferry is established."

There is no room to establish another ferry; for the ferry already established, by forming a part, continues the highway over the water, and occupies that place. In the sense here applied, it may be said that a highway is already laid out over the water "where such ferry is established," during the period for which the franchise is granted, and until it expires, or be revoked or forfeited. The county court has no jurisdiction to establish another ferry at such place, designed to accommodate the travel passing over such highway "where such ferry is established"; for the statute secures the exclusive privilege as to this to the ferry already established. Construing the statute in the strictest sense, by confining the "exclusive privilege" to the place "where such ferry is established," and it being limited entire to the highway, or place in which the public have rights, of which the ferry forms a part, the conclusion seems inevitable that the county court, having exercised its jurisdiction by the grant of a license to keep a ferry at such

place or highway, cannot exercise it again while such franchise exists. Just outside or beyond this, and not for the purpose of connecting other places or highways in which the public have rights of access, is not within the purview of the authority conferred on the county court by the statute to grant franchises to keep ferries. That would be to establish a ferry where there was neither highway nor public place, without which the public could not be accommodated, and would necessarily be inoperative and void.

Now, the ferry which is sought to be established is shown by the record to be designed to accommodate the same traveling public for which the Albina Ferry was licensed. It founds its claim to the franchise upon the limited facilities and imperfect accommodations furnished by the existing ferry to meet the present and growing demands of the traveling public at the place where it is established, and therefore the right and the need to establish another ferry at such place for the convenience of the public. There is no pretense that it will form connection with any other place or highway, in which the public have rights, than the highway connected by the Albina Ferry, and of which it forms a part. It only claims not to occupy the particular spot where the other ferry lands; but it does not deny its proximity to it, and object to serve the same custom, and to form a part of the same highway which the franchise of the Albina Ferry now covers; and this is assumed and recognized in the order of the court granting the license to it; for the order only seeks to protect the landings and the passage of the boats of the Albina Ferry, but not the exclusive privileges, secured to the Albina Ferry by the statutes as a part of the highway, of transporting all persons and property where it is established. It is the proximity of a rival ferry, carrying passengers from the same place as where the Albina Ferry is licensed, which infringes and violates the exclusive privileges secured by its franchise. When the proximity is such as to produce this result, it is in effect and substance establishing another ferry at the same place as where the Albina Ferry is established, which the county court cannot do without violating the statute which

gives these exclusive rights to the Albina Ferry at the place where established, and therefore the county court is inhibited from licensing another ferry at that place.

When it is considered that the period for which a ferry license is granted is not to exceed five years, the outlay and expense necessarily involved, the duty the law imposes, of keeping safe and commodious boats for transportation, the right of regulating its tolls, and the bond required to be given to better secure and enforce the faithful performance of all the duties and obligations the law imposes and attaches to the franchise in the interest, and for the benefit of the public convenience and accommodation, a just and satisfactory reason is found why our statute secures to every person licensed to keep a ferry the exclusive privilege of transportation across the stream where the ferry is established.

In the case before us, we are not concerned with the power or jurisdiction of the court to establish ferries to connect with other highways or places, although the effect of establishing such, by reason of vicinity, might be to divert the custom and diminish the tolls of an existing ferry; nor of the effect of a change of circumstances produced by an increase of population, or of a new neighborhood requiring the opening of new highways, which would carry with it the right to continue their line across a water highway. We are simply construing our statute with regard to the record before us, for the purpose of ascertaining whether the county court can grant a license to establish a ferry, in substance, at the same place where one is already licensed and established. The statute gives this exclusive privilege of transportation at the place where such ferry is established, and the establishing of another, in substance, at the same place, is in contravention of such exclusive privileges, and beyond the power of the court to do. Whether these exclusive privileges conferred by the statute extend beyond the place where the ferry is established, and include the common-law doctrine of exclusive rights of transportation to such extent on each side as to prevent near and injurious competition, as contended, is not presented by the record before us, nor decided. We only decide, in constru-

ing our statute upon the case made by this record, that the court was without authority to grant the Montgomery license. And here, we think, the case ought properly to have ended. But in the Circuit Court it seems that an objection was raised and argued for the first time as to the validity of the assignment of certain interests in the Albina Ferry license to the Multnomah Railway Company; and the court held that a ferry license, being a personal trust, was not assignable, and therefore such assignment was void.

As this question was argued with much zeal and great ability, we shall briefly advert to it, although we do not see how the validity of that transaction was inquirable into upon the record in this proceeding. There is, no doubt, some contrariety of opinion in the authorities upon this subject. The Albina Ferry license was not granted to the riparian owners; and in *Knott* v. *Frush*, 2 Oreg. 237, it was held that a ferry license granted to another than the riparian owner is a mere personal trust upon conditions, and their liability cannot be removed by substitution, but that such license terminates upon the decease of the persons to whom it was granted. This decision was the subject of much adverse criticism by counsel. As authorities to sustain its view, it cites *Monroe* v. *Thomas*, 5 Cal. 470, and *Thomas* v. *Armstrong*, 7 Cal. 286; and these in turn have been approved and followed in *Wood* v. *Truckee Turnpike Co.* 24 Cal. 474, and *People* v. *Duncan*, 41 Cal. 510. The license is regarded as a special privilege conferred by the government upon the individual, and which does not belong to the citizen generally and by common right. The grant of such franchise or special privilege to the individual is considered the bestowal of a personal trust and confidence, which cannot be assigned, nor be the subject of sale under execution. (*Sullivan* v. *Lafayette Co.* 58 Miss. 791; *Seal* v. *Donnelly*, 60 Miss. 662; *Ragan* v. *McCoy*, 29 Mo. 367; *The Maverick*, 1 Sprague, 24; *Arthur* v. *Commercial etc. Bank of Vicksburg*, 9 Smedes & M. 420; *State* v. *Rives*, 5 Ired. 307; *Ammant* v. *Pittsburgh Turnpike Co.* 13 Serg. & R. 210; *Lombard* v. *Cheever*, 3 Gilm. 473; Herm. Ex'ns, §§ 131, 361; Ang. & A. Corp. § 191; Redf. Railw. 419, 422; Freem. Ex'ns, § 179.)

And again, it has been said that a ferry license is in the nature of an appointment to an office having certain fees annexed to it, to be held at the pleasure of the appointing power. (*Day* v. *Stetson*, 8 Greenl. 370.) On the other hand, it is contended that the right given under a ferry license is a franchise, which is as much property as any other incorporeal hereditament; that a franchise was, by the common law, said to be a branch of the king's prerogative in the hands of the subject (2 Shars. Bl. Comm. 37); but that in America it was understood to be a particular privilege conferred by grant from the government, and vested in individuals. (3 Kent Comm. 458; *People* v. *Utica Ins. Co.* 15 Johns. 358.) Chancellor Kent says that "an estate in such franchise, and an estate in lands, rest upon the same principles, being equally grants of a right or privilege for an adequate consideration." (3 Kent Comm. 458.) In *Conway* v. *Taylor's Ex'r*, 1 Black, 632, Mr. Justice Swayne said: —

"A ferry franchise is as much property as a rent, or any other incorporeal hereditament, or chattels or realty. It is clothed with the same sanctity, and entitled to the same protection as other property."

In *Lippencott* v. *Allander*, 2 Iowa, 460, it was held that a ferry license is not vacated, nor the franchise lost, by the death of the party to whom it was granted, but passes to his representatives. This decision is in direct conflict with *Knott* v. *Frush*, *supra*; and disapproves the reasoning of the authorities cited to sustain it. It should be observed, however, that the Iowa statute makes certain provisions for the sale of such franchise as real property upon execution, which do not exist in our statute, and which were referred to in the opinion as strengthening the view therein expressed. In *Billings* v. *Breinig*, 45 Mich. 70, it was held that the franchise of keeping a ferry is property, having the valuable incidents of other kinds of property, and transferable from the original grantee to others, subject to conditions lawfully imposed, and to such governmental control as results from its public nature. (*Bowman* v. *Wathen*, 2 McLean, 376; *Felton* v. *Deall*, 22 Vt. 170; *Benson* v. *Mayor*, 10 Barb. 223; *Ladd* v. *Chotard*, 1 Minor, 366; *Lewis* v. *Intendant*

*and Town Council of Gainesville,* 7 Ala. 85 ; *Willoughby* v. *Horridge,* 16 Eng. L. & Eq. 437 ; *Dundy* v. *Chambers,* 23 Ill. 370.)
It thus appears that some diversity of opinion exists in the authorities as to the right to sell or assign a ferry franchise, or whether the same is vacated by death, and that *Knott* v. *Frush, supra,* is not without authority to sustain it. That it may be done when the consent of the power that granted it has been obtained does not seem to be questioned. But whether the county court, to whom the legislature has delegated the power to grant ferry licenses, is authorized to give its consent to a sale or assignment of a ferry license upon filing the requisite bond, or by filing such bond, and the acceptance of the same by the court, the assignment would be unassailable, we are not prepared, nor is it necessary for us to decide, except that it may not be amiss for us to observe that the statute imposes no restrictions upon the sale or transfer of the franchise, nor is there any provision that upon the death of the party to whom the license was issued, it shall be vacated and the franchise lost. The statute is simply silent upon that subject. But whether the assignment is void, or the effect of an assignment would be to vacate the license, we do not see how we can inquire in this proceeding. The record, both as to the petition and the order of the court, recognizes the validity of the existing franchise.

No question is raised by the record about the Albina Ferry license, or any sale or assignment of its franchise. The only question involved was the authority or power of the court to grant the Montgomery license. That was the object, and for which the writ of review was sued out, and the only matter necessary to be passed upon. When this was done, the court had exhausted its power upon the case made by this record, and the decision of matters *dehors* it, without reference to the correctness or incorrectness of the principle decided, was a nullity, and ought not to stand. Besides, if the franchise is a personal trust, and not assignable without the consent of the granting power, as argued and claimed, then the right to object to the transfer of the franchise, and its exercise by a party to whom it was not originally granted, was a right affecting the public, which it

belongs to its officers to take advantage of by an appropriate proceeding, and could not be collaterally assailed here. (*People* v. *Duncan,* 41 Cal. 508; *Conner* v. *Paxson,* 1 Blackf. 168; *Collins* v. *Ewing,* 51 Ala. 101.)

The judgment declaring the Montgomery license void is affirmed, but in all other respects reversed.

WALDO, C. J., concurred in the result.