H. M. SULLIVAN *v.* BOARD OF SUPERVISORS OF LAFAYETTE COUNTY.

1. HIGHWAY. *Continuity in crossing river. Ferry.*

   Where a river crosses a public road, the continuity of the highway is not broken, — it does not end on one side of the stream and begin on the other, but continues across the stream, — and the public, for the purpose of travel, have the same right to go over the highway on the water that they have to pass along any other portion of it; but where it is necessary that there should be some means of transportation over such stream, the law provides for a ferry, and in return for the services of a keeper thereof, permits him to charge and collect from persons transported by his ferry a reasonable toll.

2. FERRY. *Object thereof. Toll.*
Under the statutes of this State, the sole object of the establishment of a ferry on a highway is the accommodation of the public. The remuneration allowed the keeper of the ferry is for the purpose of securing the convenience of the ferry.

3. SAME. *License. Right of licensee. Revocation. Public interest.*
A license to keep a ferry, under our statutes, does not grant a franchise which is irrevocable except by forfeiture judicially found, and which cannot be taken for public use except by the exercise of the right of eminent domain, but confers a privilege, exclusive while enjoyed, but subject to modification or revocation when the interest of the public requires it. There is no contract between the public and the licensee, and the latter has no property in his privilege. Such is the law, whether the licensee be the owner of the soil contiguous to the ferry, or a stranger thereto.

4. SAME. *Franchise claimed by grant. Evidence thereof. Prescription.*
If a ferry franchise from the sovereign power be claimed in this State, it must be proven by the record of the grant, or if that be lost, then by evidence of its contents. And such franchise cannot be proven by prescription. *McFadden* v. *Supervisors*, 57 Miss. 618, partially overruled.

5. SAME. *Erection of bridge on site thereof. Claim of land-owner.*
Where the licensee of a ferry allows a public bridge to be erected at the site of his ferry, and partly upon his land, without objection on account of his proprietorship of the land, but only insisting that he shall be compensated for the destruction of his ferrry and the appropriation of his land, he cannot afterwards be permitted to claim the bridge as a fixture and a part of his realty, and demand damages for the public appropriation of the same because of the erection thereof, without his land having been first condemned and paid for.

6. HIGHWAY. *Report of route. Waiver of objections by land-owner.*
Where one appears before a Board of Supervisors and makes certain specific objections to the report of commissioners who have, under the order of the board, marked out the route for a public road over his land, he cannot afterwards urge against the proceedings other and different objections, which he might have made at that time, but he must be held to have waived all objections not then preferred.

7. SAME. *Damage to land of individual. How measured.*
Where the land of an individual is appropriated for a public road, his damages should not be restricted to the value of the land taken, but he should be compensated for all damages which he will sustain by the subtraction from his estate of the land condemned and by the use to which it will be put.

APPEAL from the Circuit Court of Lafayette County.

Hon. J. W. C. WATSON, Judge.

A commission appointed by the Board of Supervisors of Lafayette County, upon a petition of citizens of that county,

to select a site for the erection of a free public bridge over the Tallahatchie River, selected a place where a public ferry was kept, known as Tobatubby's Ferry, at which the river intersected a public highway.   On the 8th of September, 1879, the board contracted for the erection of the bridge at the place selected, the work to be done by the 22d of December, 1879. On the 8th of October, 1879, H. M. Sullivan presented a petition to the board alleging that he was the owner of the ferry, its landings and appurtenances, and was operating the ferry, under a license from the board, greatly to his profit, and asking for a jury to assess the damages that would result to him from the erection of the bridge.   As the bridge was actually located, its abutments rested partly upon the public highway and partly upon the adjoining land, and the board appointed commissioners to lay out a new road to correspond with the bridge.   Their report was received on the 1st of December, 1879, and on the 22d of that month Sullivan presented another petition, alleging that he was the owner of the land on both sides of the ferry and that upon which the proposed new public road was to be located, and claiming the damages resulting from the appropriation of his property and from the construction of the road.   On the 23d of December, 1879, the board ordered that a jury be summoned to assess the damage sustained by Sullivan by reason of the change in the public road, and on the 3d of January, 1880, the jury rendered a verdict assessing Sullivan's damages at $2,750.   On the 4th of March, this verdict was set aside and the petition dismissed. On the 20th of July, 1880, Sullivan obtained an injunction prohibiting work on the bridge or road.

On the 26th of July, 1880, Sullivan was notified that certain citizens of the county would, on a day named, present a petition to the Board of Supervisors praying to have a public road opened across his land to the bridge, and that if he had any objection he should be present on that day and urge the same.   Sullivan failed to appear or make any objection in response to this notice, and commissioners were appointed to

lay out the road. On the 16th of August, 1880, they reported their action in laying out the road, and on the same day Sullivan filed written objections to the report, on the grounds (1) that there was no public necessity for the road, and (2) that the proceeding was in violation of the injunction pending; and he demanded that, if the report be confirmed, he should be paid for the public appropriation of the bridge, which he claimed as his property, for the destruction of his ferry, and for the appropriation of his land for the road and bridge. The objections were overruled and the report confirmed, and a jury was ordered to "assess the damages to the land over which the road is laid out, and determine what is just compensation to said Sullivan for the land taken for the public road." Under this order the jury rendered a verdict for Sullivan for $20.54, for one and one-fifth acres of land. To this verdict Sullivan filed objections, embracing those above stated, and the further ones, (1) that the order of the board restricted the jury to a mere valuation of the land taken, excluding other damages; (2) that the value of the bridge was not assessed; (3) that the damage inflicted by taking the ferry was not assessed; and (4) that the effect of the proceeding was to take for public use Sullivan's ferry and ferry franchise. These objections were overruled, and Sullivan appealed to the Circuit Court, which affirmed the action of the Board of Supervisors; and thereupon he appealed to this court.

*Edward Mayes*, for the appellant.

1. The appellant claims that he is the owner, by prescription, as of his absolute property, of a franchise at Tobatubby's Ferry. *McFadden* v. *Supervisors*, 57 Miss. 618; *Blake* v. *McCarthy*, 56 Miss. 654; *Benson* v. *Mayor*, etc., 10 Barb. 245; 68 Ill. 524; 5 Ad. & E. (N. s.) 164; 5 Sandf. 242; 24 N. J. L. 718; 32 Barb. 102; Cent. L. J. (1881) 194; 34 N. J. L. 268; 50 Miss. 410; 7 Ga. 348; 2 Bla. Comm. 265, note 3. See also Code 1871, sects. 2380, 2386, 2617, 2619; Hutch. Code, 829, art. 6, sect. 1.

2. Appellant, being the owner of the ferry franchise, claims

that this proceeding is an effort to take his franchise for the public use, and that this cannot be done by a Board of Supervisors. *Glover* v. *Powell,* 10 N. J. Eq. 211 ; 50 N. H. 591 ; 51 N. H. 504 ; 13 Wall. 166 ; 2 Dill. 376 ; 16 Ind. 441 ; 13 La. An. 401 ; 49 N. Y. 587 ; 31 Wis. 316 ; 57 Me. 481 ; 24 Barb. 273, 362 ; 23 N. J. L. 219 ; 30 Mich. 308 ; 54 Pa. St. 144 ; 57 Miss. 618.

3. Supposing these proceedings to be not a taking in such sense as to disable the board to prosecute them further, even upon compensation, then appellant's ferry is destroyed by the new road and bridge, and he is entitled to be paid for the loss. 10 Eng. Law Rep. 1 ; 1 Nott & M. 387 ; 2 Geo. 679 ; 8 Bush, 31 ; 48 Wis. 168 ; L. R. 6 Q. B. 422 ; Pierce on Rys. 173, 184, 193 ; 5 Metc. 358 ; 6 Woodb. & M. 699 ; 42 Com. Law Rep. 713 ; 68 Com. Law Rep. 27 ; 17 Conn. 454 ; 21 Conn. 294 ; 2 Watts, 418 ; 26 Conn. 249 ; 22 N. J. L. 495 ; 44 Conn. 291 ; 64 Mo. 112 ; 11 R. I. 258 ; 10 Phila. 604 ; 57 N. H. 110 ; 36 N. J. L. 181 ; 76 Ill. 490 ; 25 N. Y. 284 ; 45 Conn. 303 ; 20 Ohio St. 473 ; 33 Wis. 629 ; 14 Eng. Law Rep. 717 ; 35 N. H. 134 ; 11 Rich. L. 239 ; 20 Eng. Law Rep. 295 ; 37 Texas, 399.

4. If neither of the foregoing propositions is correct, the appellant is yet entitled to be paid, not on a basis of the mere value of the land taken, but on a basis of the damage to the premises as a whole, and looking to the use to which the new road and bridge are to be put. 68 Com. Law Rep. 27 ; 17 Conn. 454 ; 4 Neb. 150 ; 36 N. H. 404 ; 2 McLean, 376 ; 10 Pick. 140 ; 40 Miss. 413 ; Cooley's Const. Lim. 565 ; 79 Ill. 290 ; 27 Wis. 478 ; 6 How. Pr. 467 ; 48 Wis. 168 ; 46 Wis. 625 ; 6 Or. 328 ; 21 Minn. 127 ; 36 Iowa, 324 ; 17 Hun, 344 ; 2 Iowa, 288 ; 13 Barb. 169 ; 35 N. H. 134 ; 34 Miss. 227 ; 36 Miss. 308 ; 14 Gray, 214 ; 27 Wis. 108 ; 33 Wis. 629 ; 2 Eng. Law Rep. 448.

5. If none of the foregoing propositions is correct, yet the board were trespassers on appellant's land, in building the bridge thereon, and he is entitled to be paid the value of the

land taken, as enhanced by the bridge.   37 Miss. 700 ; Walk. (Miss.) 75 ; Code 1871, sect. 2341 ; 36 Ind. 463 ; 47 Cal. 515 ; 6 N. Y. S. C. (T. & C.) 298 ; 124 Mass. 118 ; 3 Hun, 613 ; 37 Miss. 700 ; Ewell on Fixt. 57, note 4 ; 1 Redf. on Rys. 219 ; 55 Miss. 255, 261, 671 ; Herman on Estop., sects. 425–429.

6. If none of the foregoing propositions is correct, yet the proceedings for condemnation are irregular, and on points so jurisdictional that they can neither be waived nor cured.   66 N. Y. 407 ; 25 Mich. 139 ; 27 Barb. 94 ; 54 Miss. 259 ; 2 Head, 9 ; 5 J. J. Marsh. 220 ; 7 B. Mon. 488 ; 28 Mo. 50 ; Walk. (Miss.) 75 ; 36 Miss. 308 ; Code 1871, sect. 2336 ; 25 Conn. 426 ; 25 N. J. L. 309 ; 23 Conn. 189 ; 3 Yerg. 423 ; 20 Mich. 57 ; 40 Wis. 157 ; 20 Mich. 18 ; 21 Pick. 106 ; 3 H. L. Cas. 787 ; 23 Ill. 645.

*H. A. Barr*, for the appellee.

The appellant held the ferry under a license, and acquired no absolute property in his privilege by prescription.   His license was subject to be revoked for the benefit of the public, without entitling him to damages therefor.   2 Port. 305 ; 37 Texas, 399 ; 11 Pet. 420 ; 3 Wall. 210 ; 101 U. S. 791 ; 2 Geo. 679 ; 11 Leigh, 42 ; 7 Gratt. 205 ; Cooley's Const. Lim. 384, note ; 2 Cruise's Dig. 67, note ; 3 Kent's Comm. 574, 575, notes.

The appellant waived all objection to the erection of the bridge, only claiming damages, and he is not now entitled to the bridge.   42 Miss. 602 ; 46 Cal. 85 ; 62 Pa. St. 28 ; 41 Iowa, 52.   Appellant is estopped, by his conduct and statements, from claiming the bridge.   9 Wall. 274 ; 18 Ohio St. 169 ; 15 Ohio St. 64 ; 28 Miss. 430 ; Herman on Estop., sects. 418, 419.

Objections not made before the Board of Supervisors cannot now be made.   8 Geo. 410 ; 10 Geo. 714 ; 24 N. J. Eq. 210 ; 23 Mich. 524.

*Tabor & Baker*, on the same side.

The appellant had no prescriptive right in the ferry, and the Board of Supervisors could establish another ferry, or erect a free bridge, when demanded by the public interest.   37 Texas,

399 ; 11 Rich. L. 239 ; 18 Iowa, 330 ; 35 N. H. 140 ; 11 Pet. 320 ; 20 Eng. Law Rep. 301.

The Board of Supervisors having caused the bridge to be erected in good faith, it was not a trespasser, and is entitled to protection for the bridge.  42 Mo. 284 ; 46 Cal. 85 ; 47 Cal. 515 ; 62 Pa. St. 28 ; 41 Iowa, 52 ; 42 Miss. 282 ; Ewell on Fixt. 72 ; 7 Cent. L. J. 182 ; 18 Am. L. Reg. 702.

The appellant is estopped to claim the bridge.    6 C. E. Green, 288 ; 22 Cal. 252 ; 42 Mo. 279 ; 57 Mo. 256 ; 60 Mo. 332.

COOPER, J., delivered the opinion of the court.

At the beginning of this examination we are met by a question which it seems ought, in the natural course of events, long since to have obtruded itself upon the attention of the courts of this State, or of others having similar jurisdiction, and required solution ; and yet we have been able, after diligent research, to discover scarcely a trace of its consideration, and no single adjudication of it.    The question is, what is a ferry, as regulated by our Code provisions ?    Or, in other words, what is the extent and character of that right, exercised by individuals under authority of the Boards of Police of the counties, to transport persons and property across streams intersecting the public highways ?    Is it a franchise in which the individual has a property as against the State or county, or a license, or does it partake somewhat of the character of both ?

At common law, a ferry is a part of the royal prerogative existing in the hands of a subject, an exclusive right to charge and take toll from the public for transporting persons and property across waters where they may lawfully be carried. In the earlier cases the franchise was held to be an exclusion of competition, not only at the place, but in the vicinity ; so that the owner might have an action if the travel which ordinarily passed his ferry was diverted by the establishment of another ferry near him.    As the demands of travel made it necessary that the right of the owner should yield to public conven-

ience, this claim was resisted and gradually encroached upon, until it is now held that competing ferries may be established by authority of the State whenever and wherever the interest of the public shall require them. But we are not interested so much in defining the character of the franchise at common law, as it probably may exist in this State, over waters connecting different highways or localities. The question for solution is as to the character of the right acquired under our statutes authorizing and regulating ferries over streams intersecting public roads.

We do not propose to inquire whether the State or county authorities can grant a franchise to the riparian owner, or to a third person, so as to preclude a revocation of the grant or declaration of forfeiture except by judicial and direct proceeding.

The question is, what is the character and extent of the right, if claimed under the general statutory provisions, and not by special grant?

Is it a franchise conferred and held by the party as owner, so that it may not be withdrawn, or modified, or taken for public use, except by the exercise of the right of eminent domain and upon compensation made to the owner; or is it a license, conferring exceptional and exclusive privileges while held, and imposing peculiar and exceptional responsibilities, but subject to modification or revocation by the public authorities as public interest or convenience may demand?

The Constitution of 1817 made no provision for the election or appointment of Boards of County Police, and the first legislation on the subject by the State is found in an act approved June 29, 1822, entitled "An act concerning highways, ferries, and bridges." Laws 1822, p. 151.

By this act the County Court of each county is directed to appoint one commissioner from each captain's district in the county, who, when assembled, "shall have, exercise, and possess the entire superintendence and control of roads, highways, ferries, and bridges." The commissioners had power,

and were required, to compel all persons "who now are, or hereafter shall be *authorized to keep* a public ferry, to give bond to secure the discharge of his duties to the public." The commissioners were given authority to regulate the toll of any ferry kept on a public road, and the keeper of such ferry was subjected to punishment if any toll in excess of that allowed by the commissioners was charged.

Sects. 43 and 44 were as follows: "If the owner or owners of the soil where any public ferry now is, or may be hereafter established, shall refuse or neglect to give bond and security according to the provisions of this act, then, and in that case, it shall be lawful for the said Board of Commissioners, and they are hereby authorized and required, to let out the keeping of the said ferry or ferries to any person or persons who will engage to keep the same for the tolls and rates fixed by the Board of Commissioners.   *   *   *   In all cases where the Board of Commissioners of any county shall intend to let out the keeping of any public ferry, they shall first give the refusal thereof, at the end of every two years, to the owner of the soil at which the said ferry is established, and if he, she, or they so owning the soil shall and will give bond and security,   *   *   *   then, and in that case, the said ferry shall in all cases be let out to the owner or owners of the soil; but if the owner or owners of the soil at which such ferry is established shall refuse to take the same as directed by law, the said Board of Commissioners shall and may have power to let out the keeping of the same to such other person or persons as they may think proper."   Sect. 20 of Art. IV. of the Constitution of 1832 provides that "the qualified electors of each county shall elect five persons, for the term of two years, who shall constitute a Board of Police for each county, a majority of whom may transact business, which body shall have full jurisdiction over roads, highways, ferries, and bridges and *all other* matters of county police."

The provisions of the act of 1822 relative to ferries were included in an act passed March 2, 1833 (Hutch. Code,

257), the only change made being that the Boards of Police might let out the ferry to any one other than the owner, for a limited time, not to exceed *ten* years, instead of two years, as in the act of 1822.

Art. 41 of chap. 15 of the Code of 1857 provided that the Boards of Police should " have power to authorize and establish public ferries wherever they may think proper, and to *license* any person to keep the same ; but the owner of the soil where the ferry is established shall always have the privilege of *keeping* such ferry, in preference to any other person, if he will comply with the requirements of this act.   If the owner of the soil shall fail to give bond and security as required by this act, within the time to be limited for that purpose by the Board of Police, the said board, at their next meeting, may *license* some other person to *keep* said ferry for a term to be limited, not exceeding ten years, and may renew the said *license* from time to time," etc.   This provision is, *in totidem verbis*, incorporated in the Codes of 1871 and 1880.   Code 1871, sect. — ; Code 1880, sect. —.

Sect. 220 of Art. V. of the Constitution of 1869 provides for the election of Boards of Supervisors, " which body shall have full jurisdiction over roads, ferries, and bridges."

We review these statutory and constitutional provisions for the purpose of showing that the jurisdiction of Boards of Police or Supervisors over roads, highways, and ferries was conferred at an early day in the history of our State, and that the changes in the statutes regulating licensing of ferries have been but few, even in the forms of expression.

Where a stream crosses a public highway, the continuity of the highway is not broken ; it does not end on one side of the stream and begin again on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along any other portion of it ; but, as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most

economical in many cases is by ferry.   In return for the services and conveniences furnished by the keeper of the ferry, he is permitted to charge and collect from persons having occasion to employ him, a reasonable toll.   The primary object to be accomplished by the establishment of ferries on the public roads is the accommodation of the public, who are entitled to have convenient and necessary roads for travel; the remuneration of the keeper of the ferry is secondary to this : that is given that the other may be secured.   They are not established to the end that the privilege of keeping them may be conferred upon the owner of the soil, or upon the other person to whom it is given if the owner declines to accept it.   They are not portions of a royal prerogative existing in the hand of the sovereign as a source of revenue, and conferred by him upon some favorite of an hour ; they are established solely for the convenience of the public, are a part of the public highway, and are to be regulated and controlled by the public authorities.   The privilege of keeping the boats and taking toll for the use thereof may be '' let out '' to an individual ; he may be '' licensed to keep the public ferry.''   '' The owner of the soil where the ferry is established shall always have the privilege of keeping such ferry, in preference to any other person, if he will comply with the requirements of this article.''

Such are the provisions of the statutes which have from time to time been enacted in relation to public ferries.

From a consideration of these police regulations and provisions, we have concluded that it is not contemplated that a franchise is given to the keeper of the ferry which may not be revoked except by forfeiture judicially found, nor taken for public use except by the exercise of the right of eminent domain, but that a privilege is conferred — a license given — which, though exclusive while enjoyed, is revocable when the interest of the public shall require it; that there is no contract between the public and the licensee, and no property in the right.

It may be true that a ferry franchise can be conferred either by the State or county; for the purposes of this investigation this may be admitted. We only decide that the franchise is not so conferred by licensing the owner of the soil, or a stranger, to keep the ferry, under the provisions of the Code.

But it is claimed by appellant that, without any reference to the authority conferred by the Board of Supervisors under the statute, he was the owner of the ferry franchise by prescription, and in support of this claim he introduced evidence to show that he, and those under whom he claims, have for more than twenty years kept a ferry at the crossing of the public road over the river. To this it would be sufficient to reply, that the records of the board show applications from the former owners of the land to the board to fix the amount of the bonds which should be given by them as keepers of the ferry; that he himself, only a few years since, entered into bond as the keeper of a public ferry, and that in the initiatory steps taken by him in this cause he based his right to receive damages for injury to his franchise upon the ground that he was the owner of the ferry established by law. We are, however, satisfied that his claim must fail upon other grounds. We have shown that if the ferry was established by the Board of Police as a public ferry, under the exercise of their jurisdiction over roads, ferries, and bridges, as regulated by statute, the only privilege they could confer upon him, or on those under whom he claims, was a license. It is clear that by no act of an individual can a public ferry be established, even on land owned by him; on this point the authorities are unanimous and uniform. 6 Ga. 131; 10 Yerg. 280; 13 Ill. 29; 2 Dev. L. 402; 20 Ark. 560; 32 Ala. 30; 7 Gratt. 205; 9 Texas, 1; 1 Nott & M. 387; 8 How. 569. If the grant of the franchise was made by the sovereign power, the evidence thereof is to be found of record; and for grants so to be proved, no claim can be made by prescription. Prescription presupposes a grant, the evidence of which has been lost by lapse of time. The question may be fairly treated as *res nova* in this State,.

and we are confident the sound and conservative rule to estab-
lish is, that the grant of a franchise must be proved by the
record of the grant, or, if it is lost, by proof of its contents ;
and that it cannot be proved by prescription.    A different
view was expressed in *McFadden* v. *Board of Supervisors*, 57
Miss. 618 ; but we have carefully considered the matter, and
being satisfied that the views now expressed are correct, we
overrule that case so far as it conflicts with this decision.

The bridge erected by the county is not wholly in the high-
way, but one abutment rests on the plaintiff's land and the
other wholly or partially on the highway, and he claims that
the Board of Supervisors, by erecting the bridge on his land
without having first regularly condemned and paid for it, were
trespassers ; that the bridge is a fixture, and became a part of
the realty, and his property, and, therefore, in assessing the
damages sustained by him, the jury ought to have allowed the
value of the land, including the bridge.

Whatever may be the rule under ordinary circumstances,
we are satisfied that appellant does not occupy an attitude in
which he can insist upon an allowance for the value of the
bridge as a part of the damage sustained by him.    The record
clearly shows that the controversy between the county and
himself was as to whether or not he had a right to have an
allowance as damages for the value of the ferry destroyed by
the erection of a free bridge within a few feet of the ferry-
landing.    He stated to the board that he would accept what-
ever damages should be awarded by the jury, and we must
suppose the board understood him to intend thereby such
damages as the jury might *rightfully* allow.    It would be in-
equitable to permit him now to demand, alternately, the right
to determine the validity of his claim for damages by reason
of the destruction of the ferry, or the value of the bridge
erected pending the controversy.

Many objections are urged to the proceedings by which the
road was laid out and the damages assessed, some of which,
though now validated by the failure of appellant to interpose

specific objections at the time that the irregularity occurred, would have been fatal if objection had been urged at the proper time.

Appellant was notified of the application to lay out the road. He appeared and objected to the report of the commissioners, specifying the reasons and grounds of his objections. Neither of the objections then urged were sufficient to justify a rejection of the report, and he must be held as having waived any other objection which might then have been urged to the proceedings.

There is, however, one objection, at least, to the proceedings on the petition of appellant for damages which entitles him to have a new inquest. The Board of Supervisors, in ordering the jury to be empanelled, gave directions that they should allow appellant only the value of the land actually taken, as his damages. The order may be susceptible of a different construction, but that, we think, is the more obvious meaning. The true rule is, to allow all damages which are suffered by the petitioner by the subtraction from his estate of the land condemned, and the use to which it will be put. If a public road is laid out through a cultivated field, the owner would not be recompensed by the mere value of the land taken. A fence would necessarily have to be erected on each side of the highway, and for this the owner would certainly be entitled to compensation. It may be necessary to throw up an embankment on appellant's land to construct the highway, and this may, in seasons of rain or unusual high waters, cause the adjacent land to be submerged, in which event he would be entitled to compensation for that injury. It is usually safer to issue a precept as nearly in the words of the statute authorizing it as is practicable.

The judgment is reversed and cause remanded to the Board of Supervisors of Lafayette County, to be further proceeded with, on the petition of appellant for damages, in accordance with this opinion.