THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* THE NEW JERSEY STEAMBOAT NAVIGATION COMPANY, Appellant.

A ferry may be established and operated over intervening waters where they are not so wide but that they can be traversed at regular and brief intervals by boats adapted to a ferry business.

There is nothing in the nature of a ferry business which requires that a ferry shall be operated from but one place on one shore to a single place upon the opposite shore.

Under the grant to the city of New York of ferry franchises by the Montgomerie charter, the city has authority to establish a ferry to run from one place in the city to several places on Staten Island.

The city, however, in the discharge of its duty as the owner of said franchises, is not bound to have more than one terminus for its Staten Island ferries in this city, unless it is made to appear that more than one is needed for the accommodation of the public.

In an action to restrain defendant, the N. J. S. T. Co., from infringing upon the ferry franchises belonging to the said city between it and Staten Island, it appeared that defendant was engaged in carrying passengers to and from the city, its boats stopping in going and returning at several places on Staten Island and at two places in New Jersey, the round trip being about twenty-four miles. *Held*, that the business of defendant did not lose its character as a ferry business because its boats stopped on the New Jersey shore; that while in the carriage of passengers from one place on the New Jersey shore or the Staten Island shore to another on the same shore, it was simply doing the business of a common carrier as its boats did not pass over intervening waters, it was engaged in a ferry business between every point at which its boats touched for passengers and the city; that so far as it was thus operating a ferry between the city and Staten Island it was unlawfully infringing upon the ferry franchises of the city; and that a judgment restraining such unlawful acts was proper.

Also, *held*, the fact that the terminus of defendant's ferry in the city was at a private pier, seven-eighths of a mile distant from the ferry terminus established by the city, did not affect the character of defendant's acts as an unlawful intrusion upon the rights of the city.

(Argued April 28, 1887 ; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 16, 1886, which affirmed a judgment

in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to restrain an alleged infringement upon the ferry franchises of the city of New York by defendant, the New Jersey Steamboat Navigation Company, in running a ferry between said city and Staten Island.

The complaint alleged and the court found, in substance, that the city, in the exercise of the ferry franchises granted to it under and by the Montgomerie charter, had duly established a ferry between the foot of Whitehall street, in the city, and various places named on Staten Island and had leased the same; that said defendant was unlawfully engaged in operating a ferry between the city, and Staten Island, thereby intercepting and unlawfully appropriating ferriage fees belonging to the city.

Further facts are stated in the opinion.

*Noah Davis, James McNamee* and *Adolph L. Pincoffs* for appellant.[*]

*James C. Carter* and *W. W. MacFarland* for respondent.[*]

EARL, J.   The opinion in the case against the Independent Steamboat Company covers substantially all the questions which arise in this case, and but little more needs now to be written.   The complaints in both cases are substantially alike, and so are the judgments rendered, except that the individual defendants in this case were by their own consent enjoined with the other defendants and they have not appealed.

The ferry established by the city, and operated under it, ran between the foot of White Hall street in the city and New Brighton, Sailors' Snug Harbor, West Brighton, Port Richmond, Elm Park, all places on the north shore of Staten Island; and the unauthorized ferry operated by the Independent Steamboat Company ran between pier 18 on the Hudson river in the city, and the same places on the shore of Staten Island.   The ferry operated by the New Jersey Steamboat

---

[*] The points in this case were substantially the same as those in *Mayor* v. *Starin* (*ante*, p. 1):

Transportation Company started from the same pier in the city, and ran thence to the city of Bayon in the State of New Jersey, on the north shore of the Kill Von Kull to West Brighton, thence to Port Richmond, thence to Elm Park, and thence to Elizabeth Port, New Jersey, then it returned, stopping at the same places, to the same pier, the round trip being about twenty-four miles.

The right of the defendant to operate a ferry between the city and any places on the coast of New Jersey is not involved in this action. The sole question is whether it had the right to operate the ferry between the city and Staten Island.

The fact that the terminus of the ferry in the city was at a private pier seven-eighths of a mile distant from the ferry terminus established by the city, can make no difference. The city, in the discharge of its duty as the owner of the ferry franchises, was not bound to have more than one terminus for its Staten Island ferries in the city. It is not shown nor claimed that more than one was needed there for the accommodation of the public; and it does not appear that passengers and freight were not sufficiently accommodated by the terminus established by the city.

The distance of Elm Park, or even of Elizabeth Port, from the city is not so great that a ferry could not be established and operated between it and the city. Ferries to Elizabeth Port have been operated and known as ferries for more than 100 years, and it appears never to have been doubted that ferries could be operated between the two places.

It is impossible, in a general way, to specify to what distance, over intervening waters, ferries may be operated. A ferry could not be established between New York and Boston or New York and Newport or Philadelphia. The distance would be too great and the business of transporting passengers and freight between such distant places would be that of common-carriers upon public waters. But when the intervening waters are not wide and can be traversed at regular and brief intervals by boats adapted to a ferry business, there can be no question that ferries may be established and operated.

The business of the defendant did not lose its character as a ferry business because its boats in their passages stopped at places upon the New Jersey shore as well as at places upon the Staten Island shore. It was undoubtedly engaged in a ferry business between every point at which its boats touched for passengers and the city. In the carriage of passengers from one place on the New Jersey shore or the Staten Island shore to other places on the same shore, it was simply doing the business of a common carrier as its boats did not pass over intervening waters. But in going from the city its boats could leave passengers from the city at each of the places at which they stopped, and so in returning they could take passengers at each of the places and carry them to the city, and in doing this they would be engaged in a ferry business. There is nothing in the nature of a ferry business which requires that a ferry should be operated from but one place upon one shore to a single place upon the opposite shore.

There was nothing in the structure of the defendant's boats which deprived them of the character of ferry boats. They were adapted to carry travelers with their horses, vehicles and other property, and hence they could engage in a ferry business.

So, too, it cannot be successfully contended that the city could not lawfully establish a ferry which was to run from one place in the city to several places on Staten Island. If it had a single franchise for but one ferry between it and Staten Island, perhaps it could not do so, but as it owned all the franchises between it and Staten Island it could discharge its duty to the public as owner by establishing one ferry with as many termini upon the shores of Staten Island as there were landing places. Different questions would be presented for consideration if the Staten Island Rapid Transit Railroad Company were plaintiff claiming a franchise simply to run a ferry between the city and Staten Island.

We, therefore, see no reason to distinguish this case from that against the Independent Steamboat Company. The judgment in this case as in that is too broad and it should be

modified as to the restraint imposed so as to restrain the company from maintaining and operating a ferry between the city and Staten Island, and affirmed, as thus modified, without costs to either party upon this appeal.

All concur.

Judgment accordingly.