THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PHILIP MAGO, Appellant.

*Indictment for unlawfully maintaining a ferry — an excursion boat distinguished from a "ferry."*

On the trial of an indictment, under section 415 of the Penal Code, for maintaining a ferry without authority of law, the evidence showed that the defendant used a small steam yacht owned by him, on Sundays and holidays when not chartered for excursions elsewhere, in conveying passengers for hire from the village of Tonawanda to a wharf at certain picnic grounds on an island in the Niagara river; that his route had no connection with a highway on either side of the stream; that the boat was incapable of transporting the property of its passengers beyond what they carried on their persons or in their picnic baskets; and that the defendant's landing on the island was on private property, from which any of his passengers might be excluded at the pleasure of the owners. *Held*, that the evidence failed to show the maintenance of a "ferry," within the established meaning of that word.

APPEAL by the defendant, Philip Mago, from a judgment of the Court of Sessions of Erie county, rendered on the 18th day of July, 1892, upon the verdict of a jury, convicting the defendant of the crime of maintaining a ferry without authority of law.

*T. C. Becker*, for the appellant.

*Jno. Cunneen*, for the respondent.

DWIGHT, P. J. :

The judgment convicted the defendant of a misdemeanor, viz., of maintaining a ferry without authority of law, under section 415 of the Penal Code.    At and before the time named in the indict-·ment and down to the time of the trial, the defendant was the owner of a small steam yacht which he employed, on Sundays and holi- days mainly, in conveying passengers for hire from the village of Tonawanda across the east branch or channel of the Niagara river to a place of public resort on Grant island, known as " Sour Springs Grove," and back again, though he did occasionally charter his boat to take parties for the trip around the island.    Sour Springs Grove was private property, comprising a house of entertainment, picnic grounds, merry-go-rounds, and a wharf at which boats might land. The wharf was not connected with any public highway, but was maintained by the proprietors for the accommodation, solely, of visitors to the grove.    It was at the request of the proprietors that the defendant began to run his boat to the grove, and they gave him the use of the wharf for that purpose.

The boat's berth, when tied up, was within the mouth of Tona- wanda creek, at which place, when about to run to Sour Springs, the defendant took on such passengers as offered for the trip.    After leaving the mouth of the creek, he steamed up the river along the water front of the village, three-fourths of a mile or more, stopping at any point where he was hailed to take on a passenger, and then passing diagonally across the stream to his destination.

We are of the opinion that the prosecution of the business or enterprise thus described was not the maintenance of a ferry within the intendment of the statute (*supra*); we think it lacked some of the essential elements which are included in late and authoritative definitions of a ferry.    In the case of *The Mayor of New York* v.

*Starin et al.* (106 N. Y. 11), Judge EARL says: "In a general sense it (a ferry) is a highway over narrow waters;" and further, "A ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for the transportation of passengers or of travelers with their teams and vehicles and such other property as they may carry or have with them." And in *The Same* v. *New Jersey Steamboat Co.* (106 N. Y. 31), the same judge remarks: "There was nothing in the structure of the defendant's boats which deprived them of the character of ferry boats; they were adapted to carry travelers with their horses, vehicles and other property and hence they could engage in a ferry business."

The American and English Encyclopedia of Law (vol. 7, p. 941) defines a ferry to be "a public highway of special description, and its termini must be in places where the public have rights, as towns or vills, or highways leading to towns or vills. The right of the grantee is in the one case an exclusive right of carrying from town to town; in the other of carrying from one point to another, all who are going to use the highway to the nearest town or vill to which the highway leads on the other side." (Citing *Huzzey* v. *Field*, 2 Crompt., M. & R. 442.) The same compendium of law also quotes the following definition and remarks from the authorities cited: "A ferry is nothing more than the continuation of a road, and, as far as regards the authority of the State and general governments, does not differ from a toll bridge." (*Steamboat James Morrison*, Newberry's Admty. 251.) "A ferry is a highway for all of the Queen's subjects paying toll." (*Ferry Co.* v. *Barker*, 2 Exch. 149.) "Where a stream crosses a public highway the continuity of the highway is not broken; it does not end on the one side of the stream and begin again on the other, but continues across the stream, and the public for the purpose of travel have the same right to go on the water over the highway that they have to pass along other portions of it. But as a physical obstruction intervenes it is necessary that some convenient means of transportation shall be furnished and the simplest and most economical in many cases is a ferry." (*Sullivan* v. *Supervisors*, 58 Miss. 799.) These and similar expressions of the courts seem to indicate some essential elements or characteristics of a ferry, which were absent

from the enterprise conducted by the defendant. His route had no connection with a highway on either side of the stream; his boat was incapable of transporting the property of his passengers beyond what they carried on their persons or in their picnic baskets; his landing was on private property from which any of his passengers might be excluded at the pleasure of the owners; he ran only on Sundays and holidays, and, then, made the trip across the river only when his boat was not chartered for an excursion elsewhere. In short, he never carried travelers, but only excursionists, and his boat was a pleasure boat and not a ferryboat.

We think the case, as it stands upon the evidence before us, does not make out the offense of unlawfully maintaining a ferry, and that the judgment of conviction must be reversed and a new trial ordered.

Lewis, Macomber, and Haight, JJ., concurred.

Judgment of the Court of Sessions of Erie county reversed and a new trial granted, and for that purpose the case is remitted to that court.