# Richmond.

## State Highway Commissioner, Etc. v. Yorktown Ice and Storage Corporation, Investment Corporation and Another.

March 21, 1929.

The opinion states the case.

*C. M. Hall*, for the plaintiff in error.

*W. E. Hogg* and *Ashton Dovell*, for the defendants in error.

WEST, J., delivered the opinion of the court.

This is a writ of error to two orders of the Circuit Court of York county, Virginia, one entered on October 1, 1927, sustaining the demurrer of the Yorktown Ice and Storage Corporation to the petition of the Chairman of the State Highway Commission of Virginia, filed against the Yorktown Ice and Storage Corporation, Investment Corporation and Howard Ferris, substituted trustee, condemnees, asking for the appointment of commissioners to award compensation and damages for a proposed right of way. The other order, entered by the court in term on October 14, 1927, adopts and makes effective the order of October 1, 1927.

The petitioner alleges, among other things, that he is unable to agree with the landowners whose property is to be taken or is affected, upon the price and com-

pensation for the right of way required, "which is wanted to be taken and used in the construction, reconstruction, alteration, maintenance and repair of a road embraced in the State highway system" the same being "a portion of 413-A, Route 29 of the State highway system;" that "the interest or estate in said land being an easement of a right of way, sought to be condemned, is wanted for the uses and purposes of the public, as a portion of said road;" that the land to be acquired herein consists of (1) a "strip or parcel of land of varying width and lying on the west (right) side of the centre line hereinabove described and west of and adjacent to the west corporate limits of the town of York;" (2) also a "strip of land of varying width and lying on the north (right) side of and adjacent to hereinabove described centre line being * * * the point of encroachment and adjoining the lands of the town of York;" (3) certain riparian rights, beginning at a point on the centre line of Route 39, Gloucester-Yorktown Ferry and approaches, shown on attached plans as Sta. 40 + 05, being the pierhead line of the south side of York river, being approximately low water mark. The riparian rights sought are all of the riparian rights of the condemnees, "lying within the centrestrip or parcel of water lying on the west (right) side of and adjacent to the hereinabove described centre line." The property and rights sought to be taken are more accurately described in the petition and the blue print filed therewith.

The petitioner filed his petition in the clerk's office as provided by statute, to acquire an easement of a right of way by the exercise of the power of eminent domain. Notice was given the condemnees that application would be made on June 23, 1926, for the appointment of commissioners. The Yorktown Ice

and Storage Corporation filed its demurrer to the petition, but the other two condemnees made no appearance. The grounds of the demurrer were as follows:

"1. That it does not appear from the petition or from any exhibits filed therewith that the parcel sought to be condemned is necessary for highway purposes; but, on the other hand, it does affirmatively appear that the parcel of land sought to be condemned is a short strip between the present highway and the York river.

"2. That the petitioner seeks to condemn a landing for a ferry to be established, and that there is no authority in law for the condemnation by the petitioner of property for such purposes.

"3. That the chairman of the State Highway Commission is vested with authority and power in eminent domain 'in so far as may be necessary for the construction, reconstruction, alteration, maintenance and repair of the roads embraced with the State Highway System,' and to acquire by 'purchase, condemnation or gift' any ferry, other than certain ferries in Eastern Virginia, which forms a link in the highway, and it appears from the petition and exhibits filed therewith that the purpose of this proceeding is to condemn a part of the bed of the York river beyond the low water mark for the purpose of establishing a new ferry.

"4. That the law provides the means by which and the only means by which a ferry may be established by the State Highway Commission where it is the connecting link between points on the State highway system, and this proceeding does not conform to said legal requirements.

"5. That nowhere in the petition or exhibits filed therewith is the elevation to be established by the

road set forth, and the law requires the same to be done."

In the course of the argument on the demurrer, the following facts, copied from the petition, were presented to the court:

"By Chapter 461, Acts 1885-6, page 521, the General Assembly gave to W. H. Ash a right to operate a ferry between Gloucester Point and Yorktown, but it is expressly made revocable at any time; nor was the right given made exclusive.

"By deed dated May 4, 1888, recorded May 7, 1888, in Gloucester County Deed Book No. 14, page 31, William H. Ash conveyed the ferry and ferry rights to his wife, Lucy H. Ash.

"Subsequently W. H. Ash, the grantee of the legislative franchise, died.

"Later, Lucy H. Ash leased the ferry and ferry rights to her son, the present operator, William T. Ash, by lease dated January 27, 1917, recorded May 15, 1917, in Gloucester County Deed Book No. 41, pages 321-2. The rental was fixed at $50.00 a month; and the lessee is given the right to purchase outright from the lessor's estate at $10,000.00.

"William T. Ash, the lessee, operated a ferry between the public shores at Yorktown and Gloucester Point; but about two years ago he changed his landing points on both sides of the river, moving that on the York side up the river to land which he purchased in fee outside of the town limits of Yorktown, as defined, and moving that on the Gloucester side down the river to land which he purchased in fee outside of the defined town limits of Gloucester Point."

The demurrer was twice argued, and by the order of October 1, 1927, the petition was dismissed.

The petitioner, plaintiff in error here, makes assignments of error as follows:

"I. The court erred in sustaining the demurrer, and no ground of demurrer is well taken.

"II. The petitioner has the right to condemn the right of way as sought in the petition.

"III. Without regard to the establishment of a ferry, the petitioner may lawfully acquire the property sought.

"IV. The State Highway Commission, or your petitioner as its chairman, has the right to establish and operate ferries as connecting links in highways, and may acquire rights of way for that purpose, regardless of the existing ferry.

"V. The elevation to be established by the road is set out."

Inasmuch as the first four assignments of error involve kindred questions, the plaintiff in error discussed them and the assignments of error together.

██ The first ground of demurrer is without merit. It plainly appears from the petition and exhibits that the land sought to be condemned is necessary for highway purposes. The fact that it consists of a short strip of land between the present public road and the York river is immaterial. The petition is in the usual form. Its allegations meet the requirements of the statute. The petitioner, in Exhibit 2 filed by him, declares that "in his judgment it is necessary, requisite and suitable for the construction, reconstruction, alteration, maintenance and repair of a portion of a road embraced in the State Highway System, Route 29, York county, Virginia, to acquire" the right of way.

██ Upon the demurrer, the allegations of the petition must be accepted as true.

The 2nd, 3rd and 4th grounds of the demurrer relate

to the authority of the petitioner to condemn property for a landing for a ferry to be established, it being contended that the chairman of the State Highway Commission only has the power of eminent domain in so far as it may be necessary for the construction, reconstruction, alteration, maintenance and repair of the roads embraced within the State highway system," and to acquire by "purchase, condemnation, or gift," any ferry other than certain designated ferries in eastern Virginia, which form a link in the highway. It is further contended that the purpose of this proceeding is to condemn a part of the bed of the York river beyond the low water mark for the purpose of establishing a new ferry; and that this proceeding does not conform to the law which authorizes the State Highway Commission to establish a ferry as a connecting link between points on the State Highway System.

Section 1969-j, Code 1924, gives the chairman of the Commission the power of eminent domain for the purpose of "construction, reconstruction, alteration, maintenance and repair," and in addition thereto for "all purposes incident thereto." He may, under the statute, determine the necessity for the condemnation. and his decision as to such necessity is not subject to review by the courts.

In *Bragg* v. *Weaver*, 251 U. S. 57, 58, 40 Sup. Ct. 62, 63 (64 L. Ed. 135), the court said: "Where the intended use is public, the necessity and expediency of taking may be determined by such agency and in such mode as the State may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the case under the 14th amendment."

The doctrine has been approved by this court in *State Highway Commissioner* v. *Kreger*, 128 Va. 203,

105 S. E. 217, where this is said: "And the statute not submitting it to the courts as a judicial question, the necessity or expediency of the location is a legislative question, the decision of which, without judicial review, has been delegated to the State Highway Commission by the statute under consideration."

Aside from the question of the establishment of a State ferry, which is not the purpose of this proceeding, the Chairman of the State Highway Commission had the right, in addition to the condemnation of land for the roadway, to condemn land for an available landing and approach for handling road material used in the construction, maintenance and repair of the roads.

If true, as alleged by condemnees, that petitioner is seeking to condemn a landing for a ferry to be established, he has ample authority under the statute to do so. The act of the General Assembly of Virginia (Acts 1918, page 9, now section 1975-a, Code of 1924), provides that there be and hereby is created and established, "The State Highway System," consisting of certain roads running from and to certain points. A route is designated from Old Point to the West Virginia line; and the statute, section 9, provides "this also includes the line from Jamestown, Williamsburg, Yorktown, Gloucester Point, Gloucester Courthouse, to connect with a line from the bridge at Urbanna, Saluda, to West Point, Richmond, and from Gloucester Courthouse to Matthews Courthouse."

Section 1969-f, Code 1924, provides: "Except such powers as are conferred by law upon the State Highway Commission, the Chairman of the State Highway Commission shall have plenary powers for constructing, improving and maintaining the roads embraced in the State highway system."

By section 1969-j, Code 1924, the chairman is given the power of eminent domain to "condemn rights of way * * * as by said chairman may be deemed requisite and suitable."

The policy of the legislature has been to establish through routes, as appears by section 1975-e of the Code of 1924, which provides: "In undertaking the construction of roads on the routes constituting 'The Highway System' preference, so far as practicable, shall be given to such parts of such routes as will form connecting links between permanent roads already constructed by the State * * * and also to the end that through routes across the State may be provided as speedily as may be practicable."

Section 5 of Chapter 403, Acts 1922, now section 1969-e, Code 1924, provides as follows: "The State Highway Commission shall be vested with the following powers and duties: To locate and establish the routes to be followed by the roads comprising the State highway system between points designated in the act establishing said system."

■■ It was the manifest intention of the legislature to make it the duty of the chairman of the State Highway Commission to see to it that the routes designated by statute are established as *through* routes in accordance with the provisions of the act establishing the "State Highway System." It is practically conceded that a public ferry is a public highway. The authorities so hold. 11 R. C. L., page 913.

In 25 C. J., page 1049, the law is stated thus: "Ferries are frequently referred to or regarded as public highways, being continuations of the highways with which they connect, and serving the purpose of a bridge when a bridge is impracticable."

In *Reid* v. *Lincoln County*, 46 Mont. 31, 125 Pa. 429,

the Supreme Court of Montana held that "county bonds issued to provide funds for a highway system, which included a free ferry, were not invalid because the form of the bonds omitted reference to ferries; ferries being a mere portion of the highway. A public ferry being merely a part of a highway, a county may establish such ferries in the absence of special statutory authority."

Mr. Cooley, in his "Constitutional Limitations," discussing the right of the State to establish ferries over navigable streams, said: "This is only the establishment of a public highway."

In *Reid* v. *Lincoln County*, *supra*, the court uses this language: "A ferry is simply a movable portion of a highway where it crosses a stream." *Hackett* v. *Wilson*, 12 Ore. 25, 6 Pac. 652.

In *Sullivan* v. *Board of Supervisors*, 58 Miss. 790, the court stated the law thus: "Where a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin again on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along any other portion of it; but, as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most economical in many cases is by ferry."

In *Patterson* v. *Wollmann*, 5 N. D. 608, 612, 17 N. W. 1040, 1042, 33 L. R. A. 536, 538, we find this: "A ferry is a moving public highway upon water. The highway upon land meets at either shore with a physical obstruction in the shape of a stream of water. How shall the highway be carried over this stream? The solution of this problem is exclusively within the

province of the sovereign power. In this country such power is exercised by the State legislatures. It rests with such bodies, subject to such constitutional restrictions as relate to the matter, to determine whether there shall be a bridge or an embankment of earth constructed or a ferry maintained to carry a highway over a stream. The ferry may be directly under public control, or the sovereign power may authorize a person or corporation to maintain this portable highway. When the power is delegated, the grantee of the franchise discharges a public duty in operating the ferry, and in the discharge of that duty he exercises a privilege which the State may grant or withhold at pleasure. The franchise does not consist of the right to sail his boat upon the stream, or to moor it by the shore. It is the privilege of operating a floating highway, of establishing and maintaining a public thoroughfare over water, and of charging tolls for the facilities for passage so afforded. Whatever right is enjoyed by the citizens in this regard is derived exclusively from the sovereign power, which has full control over the whole subject. The State may exclude all persons from the business. It may run all ferries itself."

In *United States* v. *William Pope*, 28 Fed. Cas. 629, 630, No. 16,703, the court said: "A ferry is nothing but a continuation of a road."

In *Mayor, etc., of City of New York* v. *Starin*, 106 N. Y. 1, 12 N. E. 631, the court said: "In a general sense it (a ferry) is a highway over narrow seas; and, further, a ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for the transportation of passengers or travelers with their teams and vehicles, and such property as they may have with them. *People* v. *Mago*, 10 N. Y. Cr. R. 453, 454, 23 N. Y. Supp. 838, 69 Hun. 559."

■ The power of the State Highway Commission to acquire any ferry by purchase, condemnation, or gift is given by statute in Virginia where such ferry forms a connecting link with a State highway. Acts 1924, page 680; Code 1924, section 1975-r.

As already appears, any ferry which the State Highway Commission or its chairman might acquire to cross the York river between Yorktown and Gloucester Point would form a connecting link in the State Highway System.

It seems clear that the demurrer in the petition is not well taken and that the petitioner has the right, under the power of eminent domain, to condemn the property and rights as prayed for in the petition for the purposes therein stated.

■ There is no merit in the fifth ground of demurrer, since the elevation to be established by the road appears from the blue print filed as Exhibit No. 1 with the petition.

For the foregoing reasons, the orders complained of will be reversed, with directions that the case be reinstated upon the docket of the circuit court; that an order be entered appointing commissioners to ascertain and award damages, as prayed for, and that the case be otherwise proceeded in according to law.

*Reversed and remanded.*