WILMINGTON SHIPYARD, INC. v. NORTH CAROLINA STATE HIGHWAY
COMMISSION

No. 695SC557

(Filed 17 December 1969)

**1. State § 4— action against the State — waiver of immunity**

The State may not be sued unless by statute it has consented to be
sued or has otherwise waived its immunity from suit.

**2. State § 4; Highways and Cartways §§ 4, 9— suit against High-
way Commission — repair of ferryboats — claim on contract**

A shipyard is entitled to maintain an action against the Highway Com-
mission on a contract for the repair and reconditioning of seven ferry-
boats used in the state highway system, such action being within the
purview of the statute permitting suit against the Commission on claims
arising out of "any contract for the construction of any State highway."
G.S. 136-29.

**3. Statutes § 5— derogation of common law**

Statutes in derogation of the common law are generally construed
strictly.

**4. Statutes § 9— remedial statutes — construction**

A remedial statute must be construed so as to remedy the existing evil
and permit the courts to bring the parties to an issue.

**5. State § 4; Highways and Cartways § 9— waiver of immunity
from suit — Highway Commission — statutory construction**

The rule that statutes waiving governmental immunity must be strictly
construed does not compel the Court to take the strictest possible view
of the statute, G.S. 136-29, permitting suit against the Highway Commis-
sion on claims arising out of construction contracts, but the Court will
simply examine the language of the statute within its context, mindful
of the principle that the intent of the legislature controls the interpreta-
tion of a statute.

ON *certiorari* to review an order of *Fountain, J.,* at the 21 April
1969 Regular Civil Session of NEW HANOVER Superior Court.

This is a civil action brought by the Wilmington Shipyard, Inc.,
against the North Carolina State Highway Commission on a con-
tract for the repair and reconditioning of seven ferryboats used in
the State Highway System. The plaintiff alleged in its complaint
that G.S. 136-29 authorizes this suit against the Highway Commis-
sion.

Defendant demurred for lack of jurisdiction and prayed the ac-
tion be dismissed. The trial court entered an order overruling the
demurrer, and to the signing and entry of such order, the defendant
excepted and gave notice of appeal.

After appeal entries were made, plaintiff was permitted by order of the trial court to file an amendment to its complaint. Defendant filed in this Court a demurrer ore tenus to the amended complaint; however, such demurrer will not be considered by us as the amended complaint is not before us inasmuch as it was filed after the ruling of the trial court of which defendant complains.

*Stevens, Burgwin, McGhee & Ryals by Karl W. McGhee for plaintiff appellee.*

*Attorney General Robert Morgan by Staff Attorney James E. Magner for defendant appellant.*

BRITT, J.

Defendant assigns as error the order overruling defendant's demurrer to the complaint. The demurrer challenged the jurisdiction of the superior court to adjudicate the matters alleged in the complaint.

[1]  In *Construction Co. v. Dept. of Administration*, 3 N.C. App. 551, 165 S.E. 2d 338, this Court set out some of the basic principles which govern this case: "It is settled as a general rule that the State may not be sued unless by statute it has consented to be sued or has otherwise waived its immunity from suit. *Teer Co. v. Highway Commission*, 265 N.C. 1, 143 S.E. 2d 247; *Ferrell v. Highway Commission*, 252 N.C. 830, 115 S.E. 2d 34. The defendant in this case is an agency of the State. It is not subject to suit on contract or for breach thereof unless and except in the manner expressly authorized by statute.  \* \* \*"

[2]  Plaintiff contends that it is authorized to maintain this suit by G.S. 136-29, which permits the filing of an action in the superior court in certain cases and subject to conditions precedent as specified in the statute. This appeal, therefore, presents the question: "Does G.S. 136-29 authorize plaintiff's action against the State Highway Commission on a contract for the maintenance and reconditioning of ferryboats used in the North Carolina Highway System?" Our answer is yes.

The pertinent provisions of G.S. 136-29 are as follows:

"§ 136-29.  *Adjustment of claims* — (a) Upon the completion of any contract for the construction of any State highway awarded by the State Highway Commission to any contractor, if the contractor fails to receive such settlement as he claims to be entitled to under his contract, he may, within sixty (60)

days from the time of receiving his final estimate, submit to the State Highway Administrator a written and verified claim for such amount as he deems himself entitled to under the said contract setting forth the facts upon which said claim is based. * * *

(b)   As to such portion of the claim as is denied by the State Highway Administrator, the contractor may within six (6) months from receipt of said decision, institute a civil action for such sum as he claims to be entitled to under said contract by the filing of a verified complaint and issuance of summons in the Superior Court of Wake County or in the superior court of any county wherein the work under said contract was performed. * * *

* * *

(e)   The provisions of this section shall be deemed to enter into and form a part of every contract entered into between the State Highway Commission and any contractor, and no provision in said contracts shall be valid that is in conflict herewith."

The impact of this statute is well summarized in 17 N.C.L. Rev. 340 as follows: "Prior to this statute [c. 318 at that time] one who had any claim growing out of a contract with the commission could not bring suit against the commission for it is a state agency and no consent to suit has been given. The claimant might present his claim to the general assembly or he might invoke the original jurisdiction of the supreme court under Article IV, Section 9 of the state constitution. [After 1965 Amendment, Section 10.] The latter course was not very satisfactory for the court has said that in such a proceeding it will consider only questions of law. The decision of the court, if in favor of the claimant, was simply recommendatory and was reported to the next General Assembly for its action. * * *"

[3, 4]   In determining whether G.S. 136-29 authorizes plaintiff's suit, this Court notes the principle that statutes in derogation of the common law are generally construed strictly. On the other hand, as a remedial statute, it "ought to receive from the courts such a construction as will remedy the existing evil," *Morris v. Staton,* 44 N.C. 464, so as "to advance the remedy and permit the courts to bring the parties to an issue." *Land Co. v. Lange,* 150 N.C. 26, 63 S.E. 164. The Workmen's Compensation Act, for example, was an "* * * innovating substitution of statute law in a field theretofore left entirely to the common law, — in the retreat from the outmoded methods of the common law to a more modern concept

* * *." The court held that because of the radical and systematic changes in the common law, a statute "so markedly remedial in nature" must be liberally construed with a view to effectuating its purposes. *Essick v. Lexington*, 232 N.C. 200, 60 S.E. 2d 106.

The General Assembly has undertaken a comparably radical and systematic substitution of statutory provisions for the monarchistic doctrine of sovereign immunity: by G.S. 97-2(3) and 97-7, the State is an "employer" subject to workmen's compensation; by G.S. 143-291, *et seq.*, tort claims against State agencies and institutions may be asserted; by G.S. 143-135.3, the State may be sued on certain contracts for the construction of public buildings, and by G.S. 136-29, the State may be sued on a contract for highway construction.

The separate opinions of three distinguished justices in the case of *Alliance Co. v. State Hospital*, 241 N.C. 329, 85 S.E. 2d 386, reflect a disagreement at that time as to which rule of construction should be applied to statutes waiving immunity. The majority opinion concluded that "* * * [h]owever, it is not here necessary to pass upon the question as to rule of construction in a statute waiving immunity," holding that even a liberal construction of the Tort Claims Act, which the appellee urged, did not require the particular result urged by the plaintiff. Parker, J. (later C.J.), dissenting, was of the view that "[t]he current trend of legislative policy and of judicial thought is toward the abandonment of the monarchistic doctrine of governmental immunity, as exemplified by Tort Claims Acts enacted by the Congress and the Legislatures of various states. The purpose of such acts is to relieve the legislative branch of the government from the judicial function of passing upon tort claims against the State."

In *Floyd v. Highway Commission*, 241 N.C. 461, 85 S.E. 2d 703, filed three weeks after *Alliance*, the decisions reflected the same disagreement. After setting out the controversy, the majority opinion said by way of dicta, "* * * [W]e think the sounder view is that they should be strictly construed," to which Parker, J., dissenting, replied, "I do not agree with the expression in the majority opinion that *we think* the sounder view is that the Tort Claims Act of this State should be strictly construed." (Emphasis added.) The majority opinion continued, "At any rate, the statute giving the right to maintain the suit must be followed as written," and simply held that the plaintiff failed to show any facts sufficient for a finding of negligence. It is thus highly questionable that *Floyd* is a clear mandate from our Supreme Court that statutes in derogation of governmental immunity must be construed strictly. *Floyd* was cited in

passing as authority for such a proposition in *R. R. v. Highway Commission*, 268 N.C. 92, 150 S.E. 2d 70, and several subsequent cases, but this transformation of dicta into "authority" took place only after a dissenting opinion in *Ivey v. Prison Department*, 252 N.C. 615, 114 S.E. 2d 812, committed the error of saying that "[t]his rule of construction was given express approval by the *entire* Court in *Floyd v. Highway Com.* * * *." (Emphasis added.) Rather, it is clear from *Floyd* and *Alliance* that the court's position on the proposition was characterized by disagreement at the time. Also, the legislature disagreed with the *result* of the construction undertaken in *Floyd* and enacted Chapter 400, Session Laws 1955, ratified 31 March 1955. See *Ivey*, p. 623, Rodman, J., dissenting.

[5] It is, therefore, the opinion of this Court that the "rule" of strict construction of statutes waiving governmental immunity, which has its questionable origins in *Floyd* and *Ivey* and has subsequently been quoted without examination in cases where the strictest possible construction was not required to reach the result, is not so clearly and definitely the rule in North Carolina as to compel this Court to take the strictest possible view of G.S. 136-29. If the "rule" of strict construction is a clear mandate, still the "rule that certain statutes must be strictly construed does not require that they be stintingly or even narrowly construed, but only that everything shall be excluded from their operation which does not come within the scope of the language used, taking their words in their natural and ordinary meaning." See 7 Strong, N.C. Index 2d, Statutes, § 5, p. 74. This Court will not attempt at this point to enunciate a rule of construction, or to express a preference as to "the sounder view." Rather, we will simply examine the language of G.S. 136-29 within its context, mindful of the principle that "[t]he intent of the legislature controls the interpretation of a statute," and the principle that "[t]he intent and spirit of an act are controlling in its construction, and the language of a statute will be construed contextually * * *." See 7 Strong, N.C. Index 2d, Statutes, § 5, pp. 68 & 69.

We are of the opinion that such an approach will accurately reflect the attitude of the General Assembly, which enacted G.S. 136-29 to relieve that body from the judicial function of passing upon certain claims against the State. The role of the appellate court in dealing with a statute waiving immunity was aptly stated by Judge Cardozo in *Anderson v. Construction Co.*, 243 N.Y. 140, 153 N.E. 28: "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its

rigor by refinement of construction where consent has been announced."

Such an approach is demanded by the language of G.S. 136-29. As the Court said in *Yacht Co. v. High, Commissioner of Revenue*, 265 N.C. 653, 144 S.E. 2d 821, "The term 'highway' is a generic one 'frequently used in a very broad sense with the result that no fixed rule with regard to its meaning can be given, and its construction depends on the intent with which it is used, as determined by the context.' * * *'"

The defendant bases its argument on the contention that a ferry-boat is not included in the term "highway" as in G.S. 136-29. In *Yacht Co.*, however, the court indicated that a ferry may well be a "highway":

> "* * * In discussing the meaning to be given to the term 'highway' it has been pointed out that whether 'streets, *ferries,* railroads, toll roads, rivers or rural roads are all meant to be included in a particular statute can not, in many instances, be asserted without a careful study of the entire statute and a full consideration of all the matters which the courts usually call to their assistance in ascertaining the meaning and effect of legislative enactments.'" (Emphasis added.)

After such a study, the court in *Yacht Co.* held that the legislature did not intend that "highways" include *navigable waters* when the Revenue Commissioner attempted to apply a motor vehicle privilege tax to a yacht on the theory that such a boat comes within the statutory definition of "motor vehicle" as "any vehicle which is self-propelled and designed primarily for use upon the highways."

[2]    A careful study of the scope and history of North Carolina's statutory law on "Roads and Highways," Chapter 136 of the General Statutes, indicates a legislative intent to include ferries within the term "highway" in a proper case. Article 12, Chap. 70, § 3828, Consolidated Statutes of North Carolina, 1924, refers to the counties' acquisition of toll bridges or ferries; it provides in part that "said toll-bridge or ferry, with the causeways, roads, and bridges leading to the same, *shall become a part of the public highway.*" (Emphasis added.) The State Highway Commission, by G.S. 136-83, "* * * shall succeed to all rights and duties vested in the county commissioners or county highway commissioners * * * with respect to the maintenance and operation of any public *ferries or toll bridges forming links in the county highway systems* * * *." (Emphasis

added.) The State Highway Commission is authorized by G.S. 136-82 "* * * to acquire, own, lease, charter or otherwise control all necessary vessels, boats, terminals or other facilities required for the proper operation of such ferries or to enter into contracts with such persons, firms or corporations for the operation thereof and to pay therefor such reasonable sums as may in the opinion of said Commission represent the fair value of the public service rendered." While judicial constructions of the word highway "only throw some light upon the normal usage of the term," *Yacht Co., supra,* the overwhelming weight of authority is to the effect that a " 'ferry' is simply a movable portion of a highway where it crosses a stream." *Reid v. Lincoln County,* 46 Mont. 31, 125 P. 429. See also *Hackett v. Wilson,* 12 Or. 25, 6 P. 652.

In *State Highway Commission v. Yorktown Ice & Storage Corp.,* 152 Va. 559, 147 S.E. 239, the court held that the word "highway" included the word "ferry," "a public ferry being merely a part of a highway." *Reid v. Lincoln County, supra.*

In *Sullivan v. Board of Supervisors,* 58 Miss. 790, the court stated that "[w]here a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin again on the other, but continues across the stream * * *."

In *U. S. v. William Pope,* 28 Fed. Cas. 629, No. 16,703, the court said, "A ferry is nothing but a continuation of a road," and in *Almond v. Gilmer,* 188 Va. 822, 51 S.E. 2d 272, the court said: "It is practically conceded that a public ferry is a public highway. The authorities so hold."

There is little question that a contract for the *establishment* of a ferry — which the Commission may undertake by G.S. 136-82 — would be equivalent to the "construction of a highway." Repair or reconditioning, i.e. "maintenance" — which the Commission may undertake by G.S. 136-82 — as a means of reestablishing ferry service, is a lesser act and is deemed to be included within "construction" for the G.S. 136-29 adjustment of claims. It is the opinion of this Court that the procedure for adjustment of claims set out in G.S. 136-29 is available to the plaintiff.

The order overruling defendant's demurrer to the complaint is

Affirmed.

BROCK and VAUGHN, JJ., concur.